The UNITED STATES, Appellant,

v.

The THORSON COMPANY, Appellee.

Appeal No. 86–1036.

United States Court of Appeals,
Federal Circuit.

Dec. 10, 1986.

Michael T. Paul, Commercial Litigation Branch, Dept. of Justice, Washington, D.C.,

argued for appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen. and David M. Cohen, Director. Timothy S. Kerr, Navy Supply Center, Pearl Harbor, Hawaii, of counsel.

Marc A. Boman, Perkins Coie, Seattle, Wash., argued for appellee. With him on the brief was Harold F. Olsen.

Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge,* and NEWMAN, Circuit Judge.

FRIEDMAN, Circuit Judge.

The United States appeals from a decision of the General Services Administration Board of Contract Appeals (Board) that sustained the Thorson Company's (Thorson) protest to the Navy's award of a contract for maintenance services for automatic data processing (ADP) equipment on the ground that the Navy had not achieved "full and open competition through the use of competitive procedures" in the procurement of those services, as the Competition in Contracting Act (Competition Act), 41 U.S.C. § 253(a)(1) (Supp. III 1985), required. We affirm.

I

A. The pertinent facts, as found by the Board and not challenged on appeal, are as follows:

Thorson sells, leases, and maintains ADP equipment. In 1981, the Navy awarded Thorson a contract for the lease and maintenance of ADP equipment at the Naval Supply Center, Pearl Harbor, Hawaii. This contract was for the balance of the 1981 fiscal year, but it authorized the Navy to extend the contract for up to an additional four successive years, until September 30, 1985. The contract also authorized the Navy to purchase the leased ADP equipment. The Navy extended the maintenance portions of the contract through September of 1985, and also purchased the ADP equipment.

Thorson's main office is in Friday Harbor, Washington. At the time that the ADP contract was awarded, Thorson also had a branch office in Honolulu, Hawaii. When the ADP contract originally was executed, Thorson's Hawaii address was the one listed on the contract.

Subsequently, Thorson closed its Hawaii office and informed the Navy that mail should no longer be sent to the Hawaii office, but instead should be sent to Thorson's main office in Washington. Nonetheless, the Navy continued to send mail, including two modifications to the original ADP contract, to Thorson's former Hawaii address.

In order to prevent further mismailings, Thorson and the Navy executed a contract modification for the sole purpose of changing the Navy's records to show the correct current address of Thorson in Friday Harbor, Washington. The Navy then mailed one contract modification to Thorson's correct Washington address, but misdirected a later contract modification to Thorson's former address in Hawaii.

Thorson's former branch office in Hawaii is occupied by Saztec Hawaii, Inc. (Saztec). Saztec is operated by Delisle Sudduth, a former vice president of Thorson in Honolulu, and a current competitor of Thorson's in the ADP maintenance market. When the Navy mismailed the modifications to the original ADP contract to Thorson's former—and Saztec's current—address in Hawaii, Saztec forwarded them to Thorson in Washington.

B. Since the maintenance contract with Thorson would expire on September 30, 1985, the Navy needed a new contract to meet its ADP maintenance needs. As part of the solicitation process, the Navy published a request for competitive proposals for maintenance of its ADP equipment in the *Commerce Business Daily* on June 7, 1985. The *Commerce Business Daily* is a daily publication, issued by the Department of Commerce pursuant to 15 U.S.C. § 637(e) (1982), which lists in brief descriptive paragraphs United States Government

---

* Judge Baldwin took senior status on November 25, 1986.

procurement invitations, contract awards, and sales of government surplus property. *See International Graphics, Inc. v. United States,* 4 Cl.Ct. 186 (1983). The notice in the *Commerce Business Daily* stated that the closing date for the receipt of proposals would be July 15, 1985. The Navy did not issue the solicitation, however, until August 7, 1985, and at that time extended the closing date for receipt of proposals until September 5, 1985.

On August 9, 1985, the Navy mailed copies of the solicitation to 13 bidders whose names and addresses appeared on a Naval Supply Center bidders' list. Later in August, the Navy also mailed three amendments to the solicitation, in two separate mailings, to all parties listed on the bidders' list. The Navy submitted an affidavit from an administrative clerk at the Naval Supply Center stating that she sent copies of the solicitation and all amendments to the solicitation to all parties on the bidders' list at the addresses listed on the bidders' list. This bidders' list contained Thorson's name and its correct address in Friday Harbor, Washington, and also Saztec's name and its Hawaii address.

The Navy received three "no bid" responses from parties on the bidders' list. The only timely bid the Navy received in response to its solicitation was from Saztec. Because no other bids were received by the September 5, 1985 closing date, the Navy entered into negotiations with Saztec to provide maintenance services for the ADP equipment. After negotiations, the Navy obtained a final price and contract terms that it states are fair and reasonable. The Navy has not awarded the contract or revealed Saztec's offer.

Mr. Thorson states that he received neither the solicitation for the new procurement contract nor any amendments to the solicitation. According to Thorson, he alerted his secretary to "be on the lookout" for solicitation documents in early September because he realized that his contract with the Navy would expire in the near future. When Thorson received no solicitation materials by the middle of September, he telephoned the Naval Supply Center on September 19 or 20, 1985, regarding the procurement. Thorson informed the Navy that he wished to bid on the reprocurement but had not received any communications regarding it, and offered to submit a bid that was three percent higher than the firm's bid for the final year of the existing contract. Thorson confirmed this offer in a telegram sent to the Navy on September 23, 1985.

On September 26, 1985, the Navy telephoned Thorson and informed him that his bid would not be accepted. Although the Navy was still conducting negotiations with Saztec at the time, it informed Thorson that since his bid had not been received by the September 5, 1985 closing date, it was untimely and would be given no further consideration.

C. On September 30, 1985, Thorson filed a protest with the Board. Based on "the peculiar facts" of this case, the Board "conclude[d] that full and open competition did not occur." The Board therefore granted the protest and provided that the Navy "may satisfy its need for any or all of the subject maintenance services only by resoliciting in open competition with the protester to timely receive by certified mail, return receipt requested, any solicitation package and amendments thereto."

After reviewing the evidence, the Board found that Thorson had received neither the solicitation nor any of the amendments to the solicitation. The Board concluded that full and open competition had not been obtained since (1) Thorson, the incumbent contractor, had not received notice of the procurement until after the deadline for submitting proposals had passed, and (2) the Navy awarded the contract based on a single proposal from a former Thorson employee doing business at Thorson's former branch office.

In response to the government's motion for a limited stay pending appeal, by order dated February 3, 1986, this court authorized the Navy to procure ADP maintenance services on an "as needed" basis pending our determination of the appeal.

Since then, the Navy has conducted a number of interim procurements for ADP maintenance services, in which Thorson has been the successful bidder in all instances.

## II

A. Since the Navy issued the solicitation involved in the present case after March 31, 1985, the effective date of the Competition Act, Pub.L. No. 98–369, 98 Stat. 1203 (1984), that Act controlled the solicitation.

Under the Competition Act, government agencies "in conducting a procurement for property or services ... shall obtain full and open competition through the use of competitive procedures." 10 U.S.C. § 2304(a)(1)(A) (Supp. III 1985). The term "full and open competition" "means that all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." 10 U.S.C. § 2302(3); 41 U.S.C. § 403(7) (Supp. III 1985).

According to the House Report on the Competition Act:

> Full and open competition is accomplished only when (1) all qualified vendors are allowed and encouraged to submit offers on Federal procurements and (2) a sufficient number of offers is received to ensure that the government's requirements are filled at the lowest possible cost.

H.R.Rep. No. 1157, 98th Cong., 2d Sess. 17 (1984).

The Competition Act thus was designed to obtain "full and open competition" by providing that (1) contractors were given adequate opportunities to bid, and (2) the government received sufficient bids to insure that it obtained the lowest possible price. The former element—the opportunity-to-bid requirement—aids both contractors, by giving them a fair chance to participate in the bidding, and the government, by providing it with the lower prices that the availability of the largest possible number of bidders is likely to produce.

The government contends that it satisfied the opportunity-to-bid requirement by publishing notice of the solicitation in the *Commerce Business Daily* and that Thorson's inability to submit a timely bid resulted from Thorson's own failure to check that publication and not from anything the government did or failed to do.

■ Although, as the Board recognized, publication of notice of a solicitation in the *Commerce Business Daily* ordinarily may give sufficient constructive notice to prospective bidders to meet the requirements of the Competition Act, we cannot accept the government's contention that such publication necessarily does so in every situation. We believe that there are occasional or rare cases in which, considering all the circumstances, it cannot be said that there has been "full and open competition" merely because the solicitation was published in the *Commerce Business Daily* and was mailed to a group of anticipated probable bidders. This is such a case.

■ Thorson was the incumbent contractor. The government had renewed the contract annually for four years, which indicates that the government was satisfied with Thorson's services. This conclusion is supported by the fact that Thorson has been the successful bidder on the interim procurements the Navy conducted pursuant to the preliminary stay we granted. *See* p. 6, *supra*. In these circumstances, Thorson had every reason to believe that the government would view him favorably as a likely bidder upon the renewal of the contract.

The Board found that Thorson never received the government's solicitation material. In view of the evidence that Mr. Thorson instructed his secretary in early September to "be on the lookout" for the solicitation material and his conversation with the Navy later that month in which he stated that he had not received the solicitation material, that he wished to bid, and that he would submit a bid three percent

higher than the current price, this finding was not clearly erroneous. The finding is not inconsistent with the government's evidence that a Navy clerk had sent the solicitation material to all bidders on the list, which included Thorson at the address correctly shown on the list. Misdelivery, delayed delivery, or nondelivery of mail unfortunately sometimes happens.

We cannot say that Thorson delayed unduly in making his inquiry to the Navy regarding the status of the new procurement. Since he had every reason to believe that the Navy would consider him as one of the leading candidates for the new contract, he also could anticipate receiving solicitation material from the Navy. The record does not show how far in advance the Navy generally executed its annual renewal options under the old contract, except that it does show that the Navy exercised the option for the fifth year on September 30, 1984, the last day under the prior option, and that Thorson did not receive from the Navy the exercise of the option until October 15, 1984.

The Navy previously had misdirected mail to Thorson to its former address in Hawaii after Thorson had informed the Navy that it had closed that office. Thorson diligently acted to correct that situation by executing a contract modification that was designed solely to insure that the Navy records showed Thorson's correct address. *Cf. NRC Data Systems*, B–222912, July 18, 1986, 86–2 *CPD* 84 (protest denied where incumbent contractor had reason to know that his address on the agency's mailing list was incorrect). Even after that modification, the Navy misdirected a further contract modification to Thorson's old address in Hawaii.

When Thorson informed the Navy in September that it had not received the solicitation material and wanted to bid on the contract, the Navy had not yet executed a contract with Saztec. The Navy refused to consider the particular situation of Thorson that had resulted in his not submitting a bid that would have been timely under the solicitation of which he was unaware, or the seemingly favorable bid that Thorson proposed to make.

The Comptroller General has ruled that normally publication in the *Commerce Business Daily* satisfies the government's duty to provide contractors with an adequate opportunity to bid. *See, e.g., G & L Oxygen and Medical Services*, B–220368, Jan. 23, 1986, 86–1 *CPD* 78 (incumbent contractor has duty to request solicitation materials when notice of proposed procurement is published in the *Commerce Business Daily*); *Leavenworth Office Equipment*, B–220905, Nov. 12, 1985, 85–2 *CPD* 543 (protest denied where agency published notice in the *Commerce Business Daily* but mistakenly addressed solicitation package intended for the incumbent contractor). He has recognized, however, that there may be special situations in which such publication does not suffice. *E.g., Trans World Maintenance, Inc.*, B–220947, Mar. 11, 1986, 86–1 *CPD* 239; *Dan's Moving & Storage, Inc.*, B–222431, May 28, 1986, 86–1 *CPD* 496.

In those two cases the protester was an incumbent contractor who had made repeated requests for solicitation materials from the procuring agency. The agency had acknowledged the requests and had promised timely to forward the materials to the protester, but failed to do so. In each case, the Comptroller General sustained the protest, holding that the incumbent contractor had "a right to expect to be solicited for the follow-on contract."

In summary, considering all the circumstances of this case, we agree with the Board that "full and open competition" for this contract did not occur. This was because, as a practical matter, Thorson was not "permitted to submit sealed bids or competitive proposals on the procurement," as the Competition Act required. *See* 10 U.S.C. § 2302(3).

Our conclusion that there had not been "full and open competition" is further sup-

ported by the fact that the Navy received only one bid. Since the Navy has not revealed the final price on which it and Saztec agreed, there is no way to determine how that price compared with Thorson's offer to perform the new contract for three percent more than its current charge. The conclusory statement in the affidavit of the contracting officer that "after extensive negotiations with the apparent awardee, its final proposed price appears fair and reasonable based upon past pricing history and comparison with the government estimate" is not enough to set to rest the doubts upon that score that the circumstances of this procurement have created.

### CONCLUSION

The decision of the General Services Administration Board of Contract Appeals is affirmed.

AFFIRMED.