ABEL CONVERTING, INC., Plaintiff,

v.

The UNITED STATES, et al.,
Defendants.

Civ. A. No. 88–0177–OG.

United States District Court,
District of Columbia.

Feb. 24, 1988.

Barry Trilling and Bingham Kennedy, Trilling & Kennedy, Washington, D.C., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Roxie Jones, General Services Admin., Washington, D.C., for defendants U.S. and GSA.

John Chierichella, Ronald Schechter and Peter Garvin, Jones, Day, Reavis & Pogue, Washington, D.C., for Fort Howard.

Matthew Simchak, George Coburn and Paul J. O'Donnell, Ropes & Gray, Washington, D.C., for Kimberly–Clark.

## MEMORANDUM

GASCH, Senior District Judge.

On January 29, 1988, the Court entered an order temporarily restraining the United States from awarding any contract on bids received in response to solicitation number 7PRT–53157/K3/75B.[1] Plaintiff Abel Converting ("Abel") sought such relief upon allegations that the General Services Administration ("GSA") had failed to mail to Abel a copy of the solicitation in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C.S. § 251 *et seq.* (Law. Co-op. 1987), the Federal Acquisition Regulations ("FAR"), 48 C.F.R. §§ 14.203–1 & 14.205 (1986), and the General Services Acquisition Regulations ("GSAR"), 48 C.F.R. § 514.203–1(b) (1986). Because GSA admitted that it did not send a solicitation to Abel the holder of the existing contract and could offer no explanation for the omission, the Court determined that Abel was likely to succeed on the merits of a later request for preliminary and permanent injunctive relief. Further, the harm to Abel flowing from a contract award to another was obvious and irreparable; Abel was precluded from bidding upon or winning the proposed two-year contract which represents a substantial portion of its entire business.[2] The case is now before the Court on Abel's motion for a preliminary injunction.

Since the hearing on Abel's application for a TRO, the litigative postures of GSA and Fort Howard have changed. Apparently in response to the January 29 order, Abel, GSA, and Fort Howard began negotiating to settle this case. Deliberation had proceeded almost to completion when defendant-intervenor Kimberly–Clark discovered that the proposed settlement provided for resolicitation of items as to which it had been the low bidder but award of other items to Fort Howard. While Kimberly–Clark was aware of this case from its inception, the proposed settlement provoked its request to intervene. Consequently, the settlement negotiations were frustrated, and GSA announced its intention to resolicit all thirty-three line items included in the previous solicitation.

While Abel and Kimberly–Clark are satisfied with GSA's new posture, Fort Howard objects strenuously. To prevent any resolicitation of the six items as to which it was low bidder, Fort Howard has applied for a temporary restraining order. Thus, the hearing on Abel's motion for a preliminary injunction also addressed Fort Howard's request for a TRO.[3]

---

1. The Court's January 29, 1988 order also rejected GSA's motion to dismiss this case for lack of subject matter jurisdiction.

2. For similar reasons, the Court denies Fort Howard's ersatz motion to dismiss on the ground that Abel lacks standing to complain that GSA failed to send it a solicitation. *See infra.*

3. At the hearing on Abel's motion for a preliminary injunction and Fort Howard's application for a TRO, the Court requested that the parties stipulate to consolidation of trial on the merits with the hearing. Only Fort Howard objected, arguing that some discovery is necessary to determine, *inter alia,* whether Abel received notice of the solicitation by virtue of its relationship

## I. FACTUAL BACKGROUND

On July 27, 1987, GSA distributed solicitation number 7PRT–53157/K3/75B to invite bids for a two-year, firm fixed price requirements contract for six varieties of paper towel products in the class 7920 industrial category. Because the solicitation called for delivery to several different locations, a total of thirty-three line items appears in the solicitation. Although Abel is the incumbent contractor on twenty-eight of these line items, and requested on at least two occasions that its name be added to GSA's bidder mailing list ("BML"), and appears as an interested contractor on the BML,[4] Abel did not receive a copy of the July 27 solicitation. On August 28, 1987, GSA opened bids from the six companies that responded to the solicitation. Abel did not learn of the bid opening until September 1, 1987, and filed a protest with the General Accounting Office ("GAO") on September 8, 1987.

Prior to distributing solicitation 7PRT–53157/K3/75B, GSA published a synopsis of the solicitation in the Commerce Business Daily ("CBD")—a compendium of all federal government contracting opportunities. Abel is a subscriber to the CBD. In addition, the procurement was advertised by posting copies in GSA Regional Office Business Service Centers.

A tabulation of the submitted bids revealed that on fourteen items there was only one bidder, on seventeen items there were two bidders, and on two items there were three or more bidders. Kimberly–Clark was the sole bidder on all fourteen items as to which no other bids were received and was low bidder on six other items. Fort Howard was also low bidder on six items. The approximate value of the fourteen items is $1,500,000, and the entire solicitation would generate almost $9,700,000 in revenue.

Relying, in part, on the absence of any competing bids on fourteen items, the GAO sustained Abel's protest and recommended that bids for these items be resolicited. *Abel Converting Co.*, GAO No. B–229065 (Jan. 15, 1988). Noting GSA's violation of procurement regulations, the GAO concluded that one bid does not satisfy the "full and open competition" requirements of CICA. 41 U.S.C.S. §§ 253 & 403(7). The GAO also rejected GSA's contention that publication in the CBD constitutes constructive notice of a solicitation.

GSA acknowledged the recommendation and announced that it would follow the GAO's advice, despite the conclusion of its contracting officer that all bid prices were reasonable. Dissatisfied with this partial relief, Abel initiated the instant action for injunctive and declaratory relief and requested a temporary restraining order against award of any contracts. At the hearing on Abel's motion for a TRO, Fort Howard was permitted to intervene.

## II. DISCUSSION

Prior to consideration of the merits of the requests for injunctive relief, the Court notes that Kimberly–Clark's motion to intervene was granted at the hearing. While the company was dilatory in entering the fray, its presence does not impede the Court's ability to address in a timely manner the issues raised; Kimberly–Clark agrees with GSA and Abel that all thirty-three items should be resolicited. Furthermore, by intervening, Kimberly–Clark becomes bound by the decisions of this Court, thereby accomplishing a more complete resolution of the dispute.

with other bidders. While an expeditious remedy is important, Fort Howard is entitled to a full opportunity to present its case. *See Holly Sugar Corp. v. Goshen County Cooperative Beet Growers Association*, 725 F.2d 564, 568 (10th Cir. 1984); *Paris v. United States Department of Housing and Urban Development*, 713 F.2d 1341, 1345 (7th Cir.1983); *Gellman v. State of Maryland*, 538 F.2d 603, 604–05 (4th Cir.1976); *Acha v. Beame*, 531 F.2d 648, 651 (2d Cir.1976).

Nevertheless, the discovery period will be brief and will be immediately followed by dispositive motions so that GSA may satisfy its requirements as soon as possible.

**4.** This contention is apparently confirmed by the fact that Abel received at least eight solicitations from GSA for items regarding which it had submitted a BML application.

## A. *Abel Has Standing to Challenge GSA's Admitted Violation of Regulations*

■ The constitutional premise for the requirement of standing is the "case or controversy" provision of article III. The requirement is satisfied in this case if the plaintiff can "show that [it] has suffered injury as a result of the defendant's putatively illegal conduct and that [its] injury both may be traced to the challenged conduct and is likely to be redressed by the judicial relief he seeks." *National Maritime Union of America, AFL–CIO v. Commander, Military Sealift Command,* 824 F.2d 1228, 1234 (D.C.Cir.1987).[5] Challenging Abel's standing, Fort Howard contends that an injunction requiring GSA to resolicit the paper towel contracts is not likely to redress Abel's injury because Abel is unlikely to win award of the items as to which Fort Howard is presently the low bidder.

■ As the Court clearly articulated at the preliminary injunction hearing, the injury from which Abel suffers is not failure to underbid Fort Howard. Instead, the injury is the denial of an opportunity to bid at all. Clearly, GSA's failure to follow its regulations caused this injury, and an order by this Court directing resolicitation would redress that injury. Abel has constitutional standing to seek relief from GSA's failure to mail it a solicitation.

■ As a matter of judicial prudence, standing to challenge a government contracting decision requires (1) an allegation of injury in fact, (2) a claim that the agency's action "arguably" caused injury intended to be prevented by the statute in question, and (3) the absence of congressional intent to withhold judicial review. *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838 (D.C.Cir.1982) (citing *Control Data Corp. v. Baldridge,* 655 F.2d 283, 288–89 (D.C.Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981)). Satisfaction of the first factor is clear from the preceding discussion, and there is no clear and convincing congressional intent to withhold judicial review. Furthermore, because CICA requires that "all responsible sources [be] permitted to submit sealed bids or competitive proposals," 41 U.S.C. § 403(7), GSA's failure to send a solicitation to Abel is "arguably" within the zone of interests intended to be protected by CICA. Thus, prudential considerations permit Abel's access to this judicial forum.

■ Finally, Fort Howard insists that as a nonbidder, Abel is precluded from challenging a government procurement decision. Citing *Scanwell Laboratories, Inc. v. Shaffer,* 424 F.2d 859 (D.C.Cir.1970), Fort Howard argues that only bidders are within the zone of interest to be protected by CICA. However, Fort Howard ignores the basis for the standing of bidders—the "right to a legally valid procurement process." *National Maritime,* 824 F.2d at 1237. In *National Maritime,* the court noted that the right is founded in the "mandatory language" of federal procurement statutes and the "contractual invitation to bid embodied in the solicitation." *Id.* (citing 10 U.S.C. §§ 2304, 2305 (Supp. III 1985)).[6] While Abel enjoys no rights stem-

5. In *National Maritime,* unions representing maritime employees sought declaratory and injunctive relief vacating a contract award because the Department of Labor had failed to make a wage determination as required by the Service Contract Act. 41 U.S.C. § 353(b) (1982). The injury alleged by the unions was the loss of jobs by some of its members. 824 F.2d at 1230–31. While the union argued that the error tainted the entire contract and, therefore, required resolicitation, the court concluded that the alleged injury was unrelated to the Department of Labor's error. Thus, the injury was not traceable to the violation of the Service Contract Act. *Id.* at 1234–35.

6. Sections 2304 and 2305 of the Armed Forces procurement statute, incorporate expressly and by reference the competition requirements of CICA. For example, section 2304(a)(1) states:

Except as provided in subsections (b), (c), and (g) and except in the case of procurement procedures otherwise expressly authorized by statute, the head of an agency in conducting a procurement for property or services—

(A) *shall obtain full and open competition through the use of competitive procedures* in accordance with the requirements of this chapter and the modifications to regulations promulgated pursuant to [41 U.S.C. § 403]....

ming from the "contractual invitation to bid"—an invitation that GSA negligently failed to send, the "mandatory language" of federal procurement statutes applies equally in the case at bar. Moreover, as discussed below, Abel, as an incumbent contractor, has a right to expect that it will be solicited for follow-on contracts. *See United States v. Thorson Co.*, 806 F.2d 1061, 1065 (Fed.Cir.1986). Thus, Abel's standing as a nonbidder is as compelling under the circumstances of this case as the standing of a bidder in the circumstances faced by the *Scanwell* court.

## B. *GSA's Obligations Under CICA, the FAR, and the GSAR*

Following a careful review of federal government procurment procedures, Congress determined that at the time a majority of such procurement was achieved by noncompetitive procedures to the detriment of the government. S. Rep. No. 98–50, 98th Cong., 1st Sess. 7 (1984) [hereinafter "Senate Report"]. To correct this imbalance, Congress enacted CICA, Pub.L. No. 98–369, Division B, Title VII, 98 Stat. 1175 (1984), and established a statutory preference for the use of competitive procedures. Senate Report at 1. While Congress recognized the benefits to the government derived from competitive procurement, it commented that "possibly the most important ... benefit of competition is its inherent appeal of 'fair play.'" *Id.* at 3. Thus, under CICA, "[e]xecutive agencies are not only required to obtain competition ..., but also to increase its effectiveness." *Id.* at 18.

As codified, section 2711(a)(1) of CICA implements the "absolute preference for competition," Senate Report at 17, by requiring that "an executive agency in conducting a procurement for property or services ... shall obtain full and open competition through the use of competitive proce-

dures." 41 U.S.C.S. § 253(a)(1) (Law. Co-op. 1987). The operative phrase "full and open competition" is defined by CICA to mean "that all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." *Id.* § 403(7).

To fulfill this statutory obligation, several government agencies, including GSA, have promulgated the FAR. These regulations apply to all procurements by the federal government. One provision of the FAR relevant to this case requires that "[i]nvitations for bids or presolicitation notices shall be mailed or delivered to prospective bidders as specified in 14.205." 48 C.F.R. § 14.203–1 (1986). The applicable provisions of section 14.205 state:

(a) Solicitation mailing lists shall be established by contracting activities to assure access to adequate sources of supplies and services....

(b) All eligible and qualified concerns that have submitted solicitation mailing list applications, or that the contracting office considers capable of filling the requirements of a particular acquisition, *shall* be placed on the appropriate solicitation mailing list....

*Id.* § 14.205–1 (emphasis added). Among the regulations guiding administration of these lists, one requires that "[w]henever a list is rotated, bids shall be solicited *from* (1) the previously successful bidder." [7] *Id.* § 14.205–4(b).

To supplement the FAR, GSA has promulgated its own procurement regulations— the GSAR. The pertinent GSAR regulation states:

Active bidders (*current contractors* and bidders that responded to recent similar solicitations) *shall* be provided with bid sets for the same or similar items. Active bidders' names shall be checked

---

10 U.S.C. § 2304(a)(1) (Supp. III 1985) (emphasis added). Similarly, section 2305 requires that "[e]ach solicitation under this chapter *shall* include specifications which—... consistent with the provisions of this chapter, permit *full and open competition*." *Id.* § 2305 (emphasis added).

7. Solicitation mailing lists may be rotated to enhance the manageability of the lists. The FAR permits rotation when a list becomes so lengthy that solicitation of every company on the list is impractical. *See* 48 C.F.R. § 14.205–4 (1986).

against the bidders mailing list and, if they are not listed, they shall be added. *Id.* § 514.203–1(b) (emphasis added). GSA admits that the foregoing regulations applied to the solicitation at issue in this case.

■ In combination, CICA and the above-quoted procurement regulations imposed upon GSA a general obligation to solicit bids for class 7920 paper towels through the most effectively competitive mechanism possible. Under section 403(7) of CICA, GSA was obligated to take affirmative steps to ensure that all potentially responsible bidders were permitted to submit bids. Senate Report at 18. As both the FAR and GSAR recognize, competition is greatly enhanced by ensuring that the incumbent contractor is solicited for a bid on the succeeding contract. *See* 48 C.F.R. §§ 14.205–1 & 514.203–1(b). Thus, GSA imposed upon itself the mandatory duty of mailing a copy of solicitation 7PRT–53157/K3/75B to Abel. Further, GSA's own regulations require that Abel, as a previously successful bidder, be added to the BML.

## C. *Standard of Review*

As a preliminary matter, the Court notes that Abel's predicament has reached this forum after traversing several stages of review in an administrative agency. Consequently, the scope of the Court's review is defined by the Administrative Procedure Act ("APA"). GSA's failure to mail a solicitation to Abel and its subsequent decision to resolicit only fourteen of thirty-three line items is unlawful if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1982). Alternatively, the agency's action may be set aside if it was taken "without observance of procedure required by law." *Id.* § 706(2)(D); *see Dynalectron Corp. v. United States,* 659 F.Supp. 64, 68 (D.D.C. 1987); *Minnesota Mining & Manufacturing Co. v. Shultz,* 583 F.Supp. 184, 187 (D.D.C.1984).

■ As applied in government contracting cases, Abel must show:

either that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) *the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.*

*Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973) (footnotes omitted; emphasis added). Adapted to the facts of this case, Abel's burden is to demonstrate that GSA's failure to follow its own regulations or its violation of CICA, if any, prejudiced Abel's interests.[8] As noted previously, prejudice arises from Abel's exclusion from the bidding process. To satisfy the *Kentron* standard, Abel must convince the Court that GSA's violation of its own regulations may not be excused in the circumstances of this case or that the violation diminished competition.

## D. *Preliminary Injunction Barring Award of Any Contract Is Proper*

As a result of Kimberly–Clark's eleventh-hour intervention in this case, GSA has determined that it should resolicit all thirty-three items that were the subject of solicitation number 7PRT–53157/K3/75B. Abel, of course, and Kimberly–Clark agree. Obstructing a nonjudicial resolution is Fort Howard which has taken up the sword discarded by GSA; Fort Howard urges the Court to accept the GAO's finding that there was adequate competition on all items as to which there was more than one bid.

■ While the expert opinion of the GAO deserves careful consideration, the Court is not obligated to defer to the GAO's recommendation to GSA. *See Delta Data,* 744 F.2d at 201–02. Because there is no dispute that GSA violated procurement regulations, the only review necessary is of the GAO's determination that the "full and open competition" requirement of CICA

8. Some defendants suggest that the Court may nullify the action of GSA only if it lacked a rational basis. *See Delta Data Systems Corp. v. Webster,* 744 F.2d 197 (D.C.Cir.1984). The rationality of an agency's action, however, is relevant only if it did not violate applicable regulations or statutes. *Id.* at 204.

was met as to nineteen items and that such competition cured the violation of regulations.

Given the unusual circumstances of this case, the recommendation of the GAO is more likely a compromise than an evaluation of the merits. Unquestionably, the absence of Abel from the bidding process significantly diminished the level of competition for the class 7920 paper towel contract. Moreover, no level of competition can cure such a clearly prejudicial violation of procurement regulations. Thus, GSA's initial decision to resolicit only fourteen items was not in accordance with CICA.

### An Incumbent Contractor May Expect to Be Solicited for the Succeeding Contract

Prior to the solicitation at issue in this case, Abel had successfully bid on at least two paper towel contracts, including the present contract for class 7920 paper towels under which Abel supplies twenty-eight of the thirty-three line items. GSA concedes that Abel is a responsible contractor that is eligible for award of future contracts since GSA agrees that Abel should have been solicited and only responsible bidders deserve such consideration.[9] United States' Motion to Dismiss at 3. Moreover, on at least two occasions, Abel requested that its name be added to GSA's BML. GSA also had an affirmative obligation to add Abel, a successful contractor, to the BML. See 48 C.F.R. §§ 14.205–1(b) & 514.203–1(b) (1986).

Under similarly unusual circumstances the Federal Circuit and the Comptroller General[10] have ruled that an incumbent contractor has a "right to expect to be solicited for the follow-on contract." Dan's Moving & Storage, Inc., B–222431, 86–1 C.P.D. ¶ 496 (May 28, 1986); see Thorson, 806 F.2d at 1065; Packaging Corp. of America, B–225823, 87–2 C.P.D. ¶ 65 (July 20, 1987); Trans World Maintenance, Inc., B–220947, 86–1 C.P.D. ¶ 239 (Mar. 11, 1986). In each of these cases, the protester was an incumbent contractor who was not solicited for the succeeding (or follow-on) contract. In addition, each of these protesters had made affirmative attempts to obtain the solicitation either by expressly requesting the particular solicitation, Packaging Corp., 87–2 C.P.D. ¶ 65, at 1–2; Dan's Moving, 86–1 C.P.D. ¶ 496, at 1, or asking to be added to the agency's BML. See Thorson, 806 F.2d at 1062 (BML amended to correct protester's address); Trans World, 86–1 C.P.D. ¶ 239, at 1.

In sustaining the protests in these cases, the Federal Circuit and Comptroller General concluded that publication of pre-invitation notices in the CBD did not satisfy the agency's obligations to solicit incumbent contractors and to ensure "full and open competition." See, e.g., Thorson, 806 F.2d at 1064; Dan's Moving, 86–1 C.P.D. ¶ 496, at 2. Taking up GSA's former arguments, Fort Howard alleges that the combination of GSA's efforts to notify potential bidders, including publication in the CBD, mailing of several hundred pre-invitation notice letters, and posting of the solicitation of GSA Business Centers, was sufficient to put Abel on notice of the impending solicitation. As the Comptroller General noted in Packaging Corp., however, widespread advertisement of a bid is "somewhat misleading" when very few firms are capable of satisfying the GSA's requirements. 87–2 C.P.D. ¶ 65, at 5. In the case at bar, it appears that GSA's requirement for pop-up paper towels severely reduces the number of potential responsible bidders. Because Abel was among this small group, GSA's efforts were insufficient to satisfy the competition requirements of CICA.

---

9. In its application for a TRO, Fort Howard impugns Abel's capacity to satisfy the government's demands for product number 1709 paper towels. Fort Howard alleges that as to the one product number 1709 line item for which Abel is the current contractor, Abel was forced to seek rescue by Fort Howard when Abel could not manufacture a sufficient amount of that product. Whether this is true is entirely irrelevant. Fort Howard's opinion regarding Abel's responsibility as a government contractor has no bearing on Abel's status with GSA.

10. The Comptroller General is the author of the GAO's bid protest review opinions.

Fort Howard next argues that resolicitation of a contract as to which bids have been opened is permissible only in compelling circumstances. *See* 48 C.F.R. § 14.404–1(a)(1) (1986).[11] Thus, Fort Howard objects to GSA's announced intention to resolicit all thirty-three items referred to in solicitation number 7PRT–53157/K3/75B. The company insists that it competed fairly for the six items as to which it was low bidder and should not be deprived of the contracts simply because, in Fort Howard's view, Abel failed to apprise itself of the solicitation. Such a result, claims Fort Howard, would be unfair.

■ The restrictions in the FAR regarding cancellation of a solicitation limit only GSA's power. While GSA must have a "compelling reason" to take such action, the Court's scope of review is governed by the APA. Under the familiar standards of 5 U.S.C. § 706(2), this Court has much broader authority to direct GSA to resolicit the class 7920 paper towel contracts.

■ Contrary to Fort Howard's repeated complaint that resolicitation would unjustly compound the wrongs already perpetrated in this case, the question for the Court is not the fairness of GSA's failure to solicit Abel or its nascent intention to resolicit all the contracts. Rather, the sole question, as already noted, is whether the absence of Abel from the bidding process impaired the competitiveness of that process. Even so, the Court would strain to understand how the balance of fairness favors Fort Howard instead of Abel. Upon resolicitation, Fort Howard will be in the same position as Abel, possessing the same knowledge about the prior solicitation and bids.[12]

While the GAO concluded that two bids constituted adequate competition on nineteen of the line items, the Court disagrees. When so few bidders participate in a solicitation, the absence of even one responsible bidder significantly diminishes the level of competition. This is particularly so when the absent bidder is the incumbent contractor since that contractor previously submitted the lowest bids. Because GSA's actions "prevented a responsible source from competing[,] ... the CICA mandate for full and open competition was not met." *Trans World*, 86–1 C.P.D. ¶ 239, at 5; *see Thorson*, 806 F.2d at 1065 (exclusion of bidder, as practical matter, impaired full and open competition). The participation of Abel will also further CICA's goal of assuring that the government receives the lowest possible price. *See* Senate Report at 3.

Entirely separate from the absence of full and open competition, GSA's violation of the FAR and GSAR requires resolicitation of all line items. Abel is a small business that depends heavily on its relationship with the government. Potential revenues from the solicitation at issue are nearly equal to Abel's gross sales for the 1987 fiscal year. The practical exclusion of Abel from bidding, therefore, substantially threatens its viability. Under these circumstances, Abel has demonstrated a clear and prejudicial violation of procurement regulations. *Kentron Hawaii*, 480 F.2d at 1169.

---

11. Section 14.404–1(a)(1) of the FAR provides: Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a *compelling* reason to reject all bids and cancel the invitation.
(Emphasis added). It is worth noting, in addition, that this strong policy against resolicitation may be abrogated when "cancellation [of the invitation] is clearly in the public's interest." *Id.* § 14.404–1(c)(9). It can hardly be contested that forcing GSA to comply with its own regulations and the competition requirements of CICA is in the public interest.

12. In addition to this misguided fairness argument, Fort Howard contends that injunctive relief in Abel's favor is not justified because Abel has not demonstrated an ability to compete with Fort Howard on the six items as to which the latter was the low bidder. Again, Fort Howard delves into a matter about which the Court is not concerned in this case. Whether Abel will ultimately win any of the contracts as to which it was not permitted to bid is entirely irrelevant. The goal of CICA, which the Court is obligated to facilitate, is to ensure that competition in the bidding process is maximized. Thus, Abel's absence from the process is all that matters.

**1142**

### E. *Abel Has Satisfied the Requirements for a Preliminary Injunction*

■ "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959). The extraordinary nature of a preliminary injunction demands that the requesting party carry the burden of establishing the basis for such relief. The framework for evaluating a demand for a preliminary injunction is well-known in this circuit. In order to preliminarily enjoin the award of contracts under solicitation 7PRT–53157/K3/75B, Abel must make a "strong showing that it is likely to prevail on the merits" and must demonstrate that it will be irreparably harmed in the absence of such relief. *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958); *see Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 842 n. 1 (D.C.Cir. 1977). Additionally, the Court must be satisfied that the defendants will not suffer substantial harm and must evaluate the impact of a preliminary injunction on the public interest. *Virginia Petroleum*, 259 F.2d at 925.

■ As explained above, Abel has convinced the Court that GSA violated the FAR and GSAR and that these violations significantly impaired the competitiveness of the solicitation. Such substantial diminution in competition contravenes the express requirements of CICA. *See* 41 U.S.C. § 403(7). Moreover, the public interest strongly favors maximizing competition in all federal government procurements. Also, the award of a contract would irreversibly preclude Abel from competing for that contract. Because a preliminary injunction would simply maintain the status quo, Fort Howard will suffer no cognizable injury from a delay in the award of contracts. Thus, Abel's motion for a preliminary injunction is well-grounded and is granted.

### III. CONCLUSION

Because of GSA's unquestionable failure to follow procurement regulations requiring solicitation of an incumbent contractor, plaintiff Abel was effectively excluded from bidding on the contract for class 7920 paper towels for which it was the incumbent. The absence of Abel from this process substantially impaired the competitiveness of bidding in light of the small number of responsible bids submitted. Further, the absence of an incumbent from bidding creates a significant possibility that the government did not receive the lowest possible price.

These flaws in the bidding process equally affected all thirty-three line items in solicitation number 7PRT–53157/K3/75B. Because GSA and Kimberly–Clark agree that resolicitation is required and no harm will be suffered by Fort Howard, a preliminary injunction forbidding the award of any contract is warranted. Moreover, such a result furthers the public interest in competitive federal procurement procedures.

The foregoing discussion fairly indicates that resolicitation of all thirty-three line items is the only appropriate remedy for GSA's unlawful action. While the Court believes that expeditious initiation of this process is in the interest of all parties, Fort Howard insists that there are factual disputes—presently not discernible to the Court—that require discovery and another hearing in this case. As noted earlier, Fort Howard will have a full opportunity to present its entire case. Thus, the Court will hold in abeyance its decision on Abel's request for permanent injunctive relief.

### ORDER

Upon consideration of plaintiff's Motion for Preliminary Injunction and defendant-intervenor Fort Howard's Motion for Temporary Restraining Order, the oppositions thereto, and the record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 24th day of February, 1988

ORDERED that plaintiff's Motion be, and hereby is, granted; and it is further

ORDERED that defendant-intervenor's Motion be, and hereby is, denied; and it is further

ORDERED that defendant General Services Administration shall take no action to award any contract under or cancel solicitation number 7PRT–53157/K3/75B nor any action to resolicit bids for such contracts; and it is further

ORDERED that Kimberly–Clark's Motion to Intervene be, and hereby is, granted; and it is further

ORDERED that all discovery in this case be completed on or before February 29, 1988; and it is further

ORDERED that defendant-intervenor Fort Howard shall file its motion for preliminary injunction and summary judgment, if any, on or before March 4, 1988; and it is further

ORDERED that any opposition to defendant-intervenor's motion shall be filed on or before March 9, 1988; and it is further

ORDERED that Fort Howard's reply to any opposition shall be filed on or before March 11, 1988; and it is further

ORDERED that service of all pleadings and other papers shall be by hand; and it is further

ORDERED that no extension of time shall be granted nor any deviation permitted from the above-described schedule of discovery and briefing; and it is further

ORDERED that a final hearing in this case shall be held on March 18, 1988, at 2:00 p.m.