**COMMERCIAL DRAPERY CONTRACTORS, INC.,** et al., Plaintiffs,

v.

**UNITED STATES of America,** et al., Defendants.

**Civil Action No. 96–2818 (JR).**

United States District Court, District of Columbia.

Feb. 12, 1997.

Alan M. Grayson, Alan M. Grayson & Associates, McLean, VA, for Plaintiffs.

R. Cragi Lawrence, Assistant U.S. Attorney, Washington, DC, for Defendants.

### MEMORANDUM

ROBERTSON, District Judge.

Plaintiffs, manufacturers and suppliers of commercial draperies, sue to enjoin the cancellation of two current contracts with the government. Oral argument on their motion for preliminary injunction and defendants' motion to dismiss was presented on January 17, 1997. At that time, the parties agreed that the contract cancellation would be stayed until February 17, 1997. For the reasons discussed below, defendants' motion to dismiss must be granted.

*Facts*

Plaintiffs, Commercial Drapery Contractors (CDC) and Milford Acquisition Corp., provide draperies and related items to the government under two four-year Multiple Awards Schedule contracts that allow for purchases on an "as needed basis." The contracts are scheduled to expire in 1999. On June 11, 1996, CDC and its owner, Jeffrey Goldstein, were indicted in the United States District Court for the District of Maryland for misconduct concerning two Prior government contracts.

On July 8, 1996, CDC made a written submission to GSA addressing the impact of the indictment. CDC representatives met with GSA on July 9, 1996, to discuss the written submission. On July 23, 1996, GSA issued a notice of suspension to CDC and Milford. The suspension was to operate with regard to new contracts. That suspension, which GSA declined to revoke, was not appealed.

On November 29, 1996, GSA gave written notice that it would cancel its two ongoing Multiple Award Schedule contracts with CDC and Milford. The notice invoked cancellation clause I–FSS–690–B, present in both contracts: "Resultant contracts may be cancelled in whole or part by either party upon 30 days written notice." A memorandum placed in the file by GSA contracting official Gormley indicated that the decision to cancel was made after considering (1) that CDC and Goldstein were under indictment; (2) that they were suspended from new contracts; (3) that other agencies were continuing to place orders despite the suspension; (4) that the U.S. Attorney believed continuation of the contracts jeopardized the criminal investigation; and (5) that there were indications that CDC and Goldstein considered the suspension to be a farce.

In this case, GSA has identified another factor supporting the cancellation—the agency's belief that the ongoing MAS contracts were based upon the same fraudulent pricing scheme that was the subject of the criminal indictment. GSA concedes, however, that information giving rise to this belief was not known by the contracting official at the time the contract was cancelled.

Plaintiffs filed their complaint on December 20, 1996, against the United States, Government Services Administration, GSA Contracting Officer Monica Gormley, and GSA Suspending Officer Donald Suda. Counts I–VI of the complaint deal with the cancellation of the ongoing MAS contracts, alleging violations of due process, the Administrative Procedure Act, Federal Acquisition Regulations, the Small Business Act, and the Competition in Contracting Act. Count VII alleges that plaintiffs' suspension from future contracts was in violation of due process, APA, federal acquisition regulations, and the Small Business Act. Count VIII alleges APA violations in connection with CDC's failure to obtain an order under one of the ongoing MAS contracts.

### Analysis

1. *Scope of Review*

■ Plaintiffs' claims that GSA's actions were "arbitrary and capricious" and contrary to federal regulations and statutes are brought under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and must be evaluated against the administrative record. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C.Cir.1981); *Abel Converting, Inc. v. United States*, 679 F.Supp. 1133, 1139 (D.D.C.1988). The authority to examine plaintiffs' due process claims is independent of the APA, *see Rydeen v. Quigg*, 748 F.Supp. 900, 905–06 (D.D.C.1990), *aff'd*, 937 F.2d 623 (Fed.Cir.1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 974, 117 L.Ed.2d 138 (1992), and such an examination requires an independent assessment of the facts and the law. *Id.*

2. *Merits of Plaintiffs' Claims*

■ Plaintiffs' claims that GSA acted in violation of the Small Business Act, 15 U.S.C. § 637(b)(7), and the Competition in Contracting Act, 41 U.S.C. § 253b(c) & (d)(2), will be dismissed. The provisions of both statutes upon which plaintiffs rely only apply when a company is being considered for a contract award. They are inapplicable to a GSA action suspending or terminating a contract. 48 C.F.R. § 19.602–1(a)(2)(ii).

a. *Federal acquisition regulation claim relating to cancellation*

■ The parties disagree about whether GSA's actions in cancelling the contracts were governed by the federal acquisition regulation concerning continuation of contracts, 48 C.F.R. § 9.405–1, or by GSA's own implementing regulation, 48 C.F.R. § 509.405–1. FAR § 9.405–1 provides that ongoing contracts may be continued, even if the contractor has been suspended. It further provides that "a decision as to the type of termination action, if any, to be taken should be made only after review by agency contracting and technical personnel and by counsel to ensure the propriety of the proposed action." *Id.* The GSA regulation § 509.405–1, entitled "Continuation of current contracts," provides that "[t]ermination should be considered under the circumstances set forth in (a)(1) and (2) of this section." Subsection (a)(1) deals with default situations. Subsection (a)(2) concerns contracts involving a significant risk to the government.

Plaintiffs' argument is that the GSA regulation § 509.405–1 operates to *limit* GSA's power under the FAR to terminate contracts. They are mistaken. The GSA regulation only provides implementing rules to deal with two situations—default and significant risk—that might be encountered when ongoing contracts still exist after a contractor's suspension. In the present case, the government did not find either default or significant risk to the government. Its authority to terminate, accordingly, did not come from the GSA regulation.

The FAR provision, § 9.405–1, *permits continuation* of contracts despite a contractor's suspension. That provision does not prohibit cancellation, but neither does it authorize cancellation. For that authority, the GSA contracting officer properly turned to the contract itself which provides that "[r]esultant contracts may be cancelled in whole or part by either party upon 30 days written notice."

■ The parties' next disagreement is about whether the 30–day cancellation clause is a valid contract provision under the FAR. Plaintiffs submit that it is not, because it is a

deviation from the standard "termination for convenience" contract clause and GSA failed to comply with the regulations governing deviations. *See* 48 C.F.R. § 1.401. The single decision upon which plaintiffs rely does not support that argument. *In the matter of Gelco Payment Systems*, 1989 WL 240853, 1989 U.S. Comp. Gen. LEXIS 736, at *3–4 (July 10, 1989), is a Comptroller General's determination that a contractor's bid was nonresponsive because it contained a 30–day cancellation clause that conflicted with the standard termination for convenience clause. That decision does not stand for the proposition that a 30–day cancellation clause in a contract is a "deviation" under § 1.401. Thirty-day cancellation clauses have in fact been upheld by the Board of Contract Appeals, *see Appeal of Jolly Joe's Tire Shop*, 1986 WL 19562 (B.C.A. Jan. 10, 1986); *Appeal of KJS, Incorp.*, 1986 WL 20339 (B.C.A. Nov. 14, 1986). It was plaintiffs' burden to show that the 30–day cancellation clause in this contract was invalid, and they have not done so.

### b. *APA claims relating to suspension*

■ Under the federal acquisition regulations, a suspending official may suspend a contractor upon adequate evidence of the "commission of fraud or a criminal offense in connection with (i) obtaining, (ii) attempting to obtain, or (iii) performing a public contract or subcontract." 48 C.F.R. § 9.407–2(a). The regulations further provide that an indictment for the commission of such crimes is *per se* adequate evidence for suspension. 48 C.F.R. § 9.407–2(b). Under 48 C.F.R. § 9.407–1(c), a suspending official may extend a suspension decision to include any affiliates of the contractor. The record demonstrates that the decision to suspend plaintiffs was based upon the criminal indictment of CDC and Goldstein, and upon Milford's affiliation with CDC as set forth in the indictment. Thus, the court finds that GSA's actions were based upon substantial evidence and in accordance with its regulations.

■ Plaintiffs' fall-back claim is that GSA arbitrarily and capriciously failed to find them "presently responsible" and to select a penalty short of suspension under 48 C.F.R.

§ 9.407–1(b)(2). It is a contractor's burden to come forward with evidence of "present responsibility." CDC submitted a written memorandum of its present responsibility on July 8, 1996. (Milford did not). An oral presentation was conducted on July 9, 1996. The suspending official declined to make a finding of "present responsibility" upon evidence that Goldstein maintained close associations with CDC, that friends and relatives of Goldstein continued to manage the company, and that CDC failed to investigate the allegations in the indictment. That determination was based upon substantial evidence and was consistent with GSA's regulatory procedures.

### c. *Due process claims*

■ The government's threshold response to plaintiffs' due process claim regarding the contract cancellation—that plaintiffs have no vested property interest in the contracts because of the 30–day termination clause—fails. The government may not act arbitrarily in the cancellation of contracts, *see Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 962 (D.C.Cir.1980), and plaintiffs are entitled to challenge the government's actions.

The challenge also fails, however. Plaintiffs' reliance on the well-established rule that a contractor cannot be blacklisted without procedural safeguards, *see Art–Metal–USA, Inc. v. Solomon*, 473 F.Supp. 1 (D.D.C. 1978); *Old Dominion, supra*, 631 F.2d at 962, is misplaced. Nothing in the record supports a finding that these plaintiffs were blacklisted or debarred.

■ Plaintiffs' due process claim relating to their suspension is more complicated but no more meritorious. The argument is that they were entitled to a formal evidentiary hearing after their written response to GSA's notice of suspension and that they were entitled to a full administrative record.

The argument for an evidentiary hearing again erroneously treats suspension as if it were debarment and mistakenly relies upon federal acquisition regulations that govern debarment. *See* 48 C.F.R. § 9.406–3; 48 C.F.R. § 509.406–3. In fact, GSA's regulations specify that a fact-finding hearing will

not be conducted in suspension actions that are based on indictment. 48 C.F.R. § 509.407-3(b)(6). The procedures that preceded plaintiffs' suspension included a meeting with the suspending official and the opportunity to submit additional evidence and satisfied the requirements of due process. *See Old Dominion,* 631 F.2d at 955–56.

■ Plaintiffs' constitutional claim related to the completeness of the administrative record is also without merit. Due process requires advance notice of "the issues on which the decision will turn and to be apprised" of the factual material on which an agency relies "so that [the party] may rebut it." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 288 n. 4, 95 S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447 (1974). GSA regulations require that upon request, a party be furnished "a copy of the administrative record which formed the basis for the decision to propose" the actions taken. 48 C.F.R. § 509.406–3(b)(6); *see also* 48 C.F.R. § 509.407–3(b)(5). Plaintiffs concede that they obtained a copy of the administrative record but allege that several documents were missing. Those documents, two of which relate to the subsequent cancellation actions, became part of the record after the Notice of Suspension was issued. Plaintiffs did have a full opportunity to rebut the information on which GSA's decision *to suspend* was based. They were not prejudiced by the late receipt of documents unrelated to the grounds for suspension. *See Ghaly v. INS,* 48 F.3d 1426, 1434–35 (7th Cir.1995).

d. *APA claims relating to failure to obtain a bid*

■ Plaintiff CDC's last APA claim, tangential to its claim related to suspension and cancellation, is that GSA arbitrarily and capriciously issued a purchase order to a competitor of CDC without waiting for CDC's bid.

The record establishes that, on September 3, 1996, GSA issued a telephone request for quotations from CDC and a company called ADM for 6,064 draperies for the Army. This request was made because the Army wanted competitive bidding on the order. On September 9, 1996, before receiving the quota-

tion, GSA issued a purchase order for these requirements under ADM's MAS contract. On September 17, 1996, after GSA received quotes on its bid request, the contract specialist recommended that CDC be awarded the contract because of its lower bid. That same day, GSA discovered that an order had already been issued to ADM, and notified ADM of its intent to cancel the order. ADM informed GSA that it had already incurred substantial costs, however, and submitted documentation substantiating that claim. On October 22, 1996, because of potential cancellation costs and delays in delivery, GSA cancelled the request for bids, and ADM completed the order.

GSA was not required to cancel the order it had issued and award the army contract to CDC, because GSA was not required to competitively bid the order in the first place—as long as it was awarded to a contractor pursuant to a Multiple Award Schedule for an amount no greater than the maximum order limitation. 48 C.F.R. § 8.404–1 (1994). Plaintiffs' reliance upon *In re Commercial Drapery Contractors, Inc.,* 1996 WL 353800, 1996 U.S. Comp. Gen. LEXIS 329 (June 27, 1996), is misplaced. In that case, GSA's award of an order to a higher bidder was found to be in violation of regulations requiring an agency reasonably to ensure that the selection is "at the lowest overall cost" for orders exceeding $2,500. *See* 48 C.F.R. § 8.404(b) & (c) (1995). That regulation was not in effect at the time the present contract award was made, and CDC has failed to provide any other support for its contention. GSA's decision to cancel the Request for Bids is supported by substantial evidence in the record that ADM had already begun processing the order and could not terminate the order without incurring substantial costs.

3. *Defendant's Motion to Dismiss*

In determining the merits of defendant's motion to dismiss, the court has looked outside the pleadings and considered the administrative record. Accordingly, defendants' motion has been treated as a motion for summary judgment. *See Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Any affidavits sub-

mitted by the parties have not been considered, nor are they deemed to be part of the record of this case. *See Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973). As outlined above, the motion for summary judgment will be granted in the defendant's favor, and there is therefore no need to consider plaintiff's motion for preliminary injunction.

An appropriate order accompanies this memorandum.

### ORDER

For the reasons stated in the accompanying memorandum, it is this 11th day of February, 1997,

**ORDERED** that defendants' motion for leave to file in excess of the page limitations [# 8] is **granted**. And it is

**FURTHER ORDERED** that defendants' motion to dismiss is treated as a motion for summary judgment and **granted** and that this case is **dismissed**.