ABEL CONVERTING, INC., Plaintiff,

v.

The UNITED STATES, et al.,
Defendants.

Civ. A. No. 88–0177–OG.

United States District Court,
District of Columbia.

July 15, 1988.

Bingham Kennedy and Barry Trilling, Freedman, Levy, Kroll & Simonds, Washington, D.C., for Abel Converting, Inc.

Daniel Bensing, Asst. U.S. Atty., Washington, D.C., for U.S.

## MEMORANDUM

GASCH, Senior District Judge.

After hearings on plaintiff's application for a temporary restraining order and motion for preliminary injunction both of which were granted, the Court entered final judgment for plaintiff on March 16, 1988. Plaintiff, a small paper towel manufacturer, now seeks an award of attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1) (1982 & Supp.).

### I. BACKGROUND

In July 1987, the General Services Administration ("GSA") solicited bids for a two-year contract for the purchase of a variety of paper towel products. Plaintiff was the incumbent contractor, but no copy of the solicitation was mailed to it. Direct notification of incumbents is expressly required by GSA regulations, 48 C.F.R. § 514.203–1(b), and implicitly required by the Federal Acquisition Regulations, *id.* § 14.205–1 and the Competition in Contracting Act ("CICA"), 41 U.S.C. § 251 *et seq.*

Despite admitting that it had failed to comply with these regulations and statute, GSA refused plaintiff's demand that bids be resolicited. As a result of plaintiff's

protest of this decision, the General Accounting Office ("GAO") concluded that a portion of the solicitation should be rescinded. *Abel Converting, Inc.*, GAO No. B–229065 (Jan. 15, 1988). The GAO distinguished those items of the solicitation for which only one bid was submitted from those for which more than one bid was submitted. The distinction was based on the Competition in Contracting Act ("CICA"), Pub.L. No. 98–369, 98 Stat. 1175 (1984) (codified at 31 U.S.C. § 3551 *et seq.* & 41 U.S.C. § 251 *et seq.*), which requires that government contracts be let only after "full and open competition." *Id.* §§ 253 & 403(7).

Dissatisfied with the partial remedy recommended by the GAO, plaintiff filed suit seeking temporary and permanent injunctive relief against award of a contract by GSA under the faulty solicitation and directing GSA to resolicit bids for all thirty-three items originally appearing in the solicitation. Finding no basis for GSA's failure to mail a solicitation packet to plaintiff, the Court granted plaintiff's application for a temporary restraining order. After a prolonged hearing and extensive briefing, the Court preliminarily enjoined GSA from awarding any contracts under the solicitation. *Abel Converting, Inc. v. United States*, 679 F.Supp. 1133, 1142 (D.D.C. 1988).[1]

Throughout this litigation the parties negotiated for settlement but were unable to reach a compromise acceptable to all. Because the GSA announced an intention to resolicit all thirty-three items and intervenors withdrew resistance to this proposal, *see, e.g.*, Order, *Abel Converting, Inc. v. United States*, Civil Action No. 88–0177–OG (filed Mar. 10, 1988) [available on WESTLAW, 1988 WL 28331] (granting defendant-intervenor Fort Howard's motion to dismiss voluntarily its cross claim), the Court entered judgment for plaintiff on March 16, 1988. Plaintiff now moves for an award of attorney's fees and expenses under EAJA.

## II. DISCUSSION

The EAJA authorizes an award of attorney's fees and expenses against the United States

> in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The benefits of EAJA do not inure, however, to all litigants who challenge the United States. To qualify for these benefits, a corporation must be the prevailing party, must have a net worth of no more than $7,000,000, and must employ no more than 500 employees. *Id.* §§ 2412(d)(1)(B) & (d)(2)(B).

The government does not contest plaintiff's capacity to qualify for an award under EAJA. Instead, the parties' dispute focuses on whether the treatment of plaintiff's protest by the GSA was substantially justified. The GSA also insists that the fees and expenses demanded by plaintiff are exaggerated.

### A. *Was The Position Of The GSA Substantially Justified?*

■ As a qualifying party under the EAJA, 28 U.S.C. § 2412(d)(2), plaintiff is entitled to recover its attorney's fees and expenses, unless the GSA can demonstrate that its position on the merits of this case and its conduct prior to litigation were substantially justified. *See Cinciarelli v. Reagan*, 729 F.2d 801, 804 (D.C.Cir.1984); *Trahan v. Regan*, 824 F.2d 96, 101 (D.C.Cir. 1987); 28 U.S.C. § 2412(d)(2)(D). As recently explained by the Supreme Court, the government satisfies this burden if its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). The standard

---

1. The Court's opinion granting plaintiff's motion for a preliminary injunction sets forth more fully the circumstances of plaintiff's failure to receive a bid solicitation and subsequent protest to the GAO. *Abel Converting*, 679 F.Supp. at 1136.

"is no different from the 'reasonable basis in both law and fact' formulation adopted by ... the vast majority of ... Courts of Appeals that have addressed this issue." *Id.* (citing cases from the First, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits).[2]

■ An agency is not *per se* precluded from satisfying this standard simply because its action is determined to be arbitrary and capricious. *Federal Election Commission v. Rose,* 806 F.2d 1081, 1089 (D.C.Cir.1986). There is a "rich variety of agency conduct" to which the arbitrary and capricious label may be affixed, and EAJA requires that the Court reexamine the merits of the conduct under the standard set forth by that statute. *Id.* Of the many reasons for invalidating agency conduct under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, some have little to do with the reasonableness of that conduct. When the conduct is determined to be "contrary to law," however, "the government will rarely be able to demonstrate that its administrative action was substantially justified." *Trahan,* 824 F.2d at 102.

> This determination, in contrast to the "arbitrary and capricious" finding, inevitably reflects on the reasonableness of the agency's action in light of the organic law. Due to the deference granted the agency, the determination that an agency's action is contrary to law in this context is basically a determination that the agency has acted unreasonably.... "When the construction of an administrative regulation rather than a statute is in issue, deference [to the agency] is even more clearly in order." ... A court may invalidate an agency's construction of its regulations only if it is "plainly erroneous or inconsistent with the regulation." ... Thus, when a court invalidates an agency action that is based on the agency's interpretation of its ... own regulations, the court is in effect finding that the interpretation is, at best, unreasonable.

*Id.* (citations omitted).[3] In "rare circumstances," however, the agency may surmount this presumption. As GSA argues in this case, one such circumstance is when the agency relies upon its prior interpretation of the regulation or judicial precedent. *Id.*

*Trahan* obviously establishes a strong presumption that agency action in contravention of its own regulations is not justified to a reasonable degree. Had this case traversed all the stages of litigation with the result presaged by plaintiff's success at the preliminary stages, the Court's task would simply be to determine whether the circumstances of this case are a presumption-rebutting rarity. The question is complicated, however, by the unusual manner in which this case was terminated. Before the merits of the GSA's action were presented for review, the agency withdrew its opposition to resolicitation of all items in the faulty solicitation. Resistance by defendant-intervenors to resolicitation also dissipated before the Court could finally determine whether the GSA had acted contrary to law in refusing to adopt initially the position to which it eventually acquiesced. The ostensible reasons for this disposition of the case were the GSA's need to procure quickly the paper towels and the disproportionate cost of protracted litigation; there was no admission by any de-

---

2. The Supreme Court expressly rejected the standard formerly prevailing in this Circuit that the government's position is substantially justified if its position is "slightly more than reasonable." *Pierce,* 108 S.Ct. at 2551; *see Trahan v. Regan,* 824 F.2d 96, 101 (D.C.Cir.1987); *Federal Election Commission v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986).

3. Although *Pierce,* 108 S.Ct. at 2551, rejected the "slightly more than reasonable" interpretation prevailing at the time *Federal Election Commission v. Rose,* 806 F.2d 1081 (D.C.Cir.1986), was decided, *Pierce* does not diminish the indepen-

dence of the "substantially justified" question from a finding that the government's position was "arbitrary and capricious." On the contrary, the definition of "substantially justified" adopted in *Pierce* strengthens the general conclusion in *Rose* that arbitrary and capricious government action may nevertheless be substantially justified. Surviving equally well after the *Pierce* decision, however, is the more specific analysis in *Trahan* that government action contrary to law will only rarely be substantially justified. 824 F.2d at 102.

fendant that the plaintiff's arguments would inevitably prevail.

■ Our Circuit Court has suggested that settlement at the behest of the government creates an irrebuttable presumption that its position was not substantially justified.

It seems clear that, if the government does not immediately accede to the plaintiff's demand, but instead initially opposes his claims and then at some later stage (e.g., in a pre-trial settlement) surrenders, the United States will be liable for attorneys' fees.... Under such circumstances, not only will [sic] government have acted unreasonably, but it will have adopted (at least briefly) a litigation position lacking substantial justification.

*Spencer v. N.L.R.B.,* 712 F.2d 539, 555 n. 58 (D.C.Cir.1983). Though apparently unequivocal, the effect given by *Spencer* to settlement by the government relies on an inference not universally applicable to settled cases. *Pierce,* 108 S.Ct. at 2551. The inference simply is that the government would settle only if its position were not substantially justified. This case is evidence that the inference is not always well-founded. The decision to settle was purportedly based on a balancing of the value of litigation versus its cost and the urgency of the need for paper towels. Consequently, the Court cannot conclude without some examination of the merits that GSA's settlement of the case was tantamount to an admission that its position was not substantially justified. *See Cinciarelli,* 729 F.2d at 807 n. 6.

Although settlement vitiated the need for trial or summary judgment proceedings, the Court undertook an unusually extensive examination of the GSA's position in the course of granting plaintiff's motion for a preliminary injunction. *See Abel Converting,* 679 F.Supp. at 1138–1141. After reviewing the requirements for full and open competition in government contracting and the express regulatory requirements for notice to incumbent contractors, the Court concluded that plaintiff had "demonstrated a clear and prejudicial violation of procurement regulations." *Id.* at 1141 (citing *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973)). The legal premises for this conclusion were simply that the absence of an incumbent from a very small pool of bidders substantially diminished the competitiveness of the bidding process and that GSA had plainly violated relevant regulations designed to ensure compliance with these statutory competition requirements. The Court also noted that the Federal Circuit and the GAO have ruled that an incumbent contractor may expect to be solicited for follow-on contracts. *Id.* at 1140. Essentially, the Court concluded that the GSA had acted contrary to law when it rejected plaintiff's protest and refused to redistribute the paper towel contract solicitation.

■ Following the conclusion in *Trahan* that a "contrary to law" finding is only rarely compatible with a "substantially justified" finding, the plaintiff is entitled to recover attorney's fees and expenses unless the GSA's refusal to resolicit was reasonably based on judicial precedents or a prior interpretation of the relevant procurement regulations. *See* 824 F.2d at 102. The agency insists its action falls within this narrow exception. The legal authority upon which GSA relied for its refusal to resolicit included:

- A procurement regulation that prohibits rescission of bid solicitations absent a "compelling reason."
- Several GAO decisions allegedly holding that failure to solicit a potential bidder is not a compelling reason for rescission of the solicitation.
- The judicial deference to agency procurement decisions.
- Several GAO decisions holding that publication of the fact of a solicitation in the Commerce Business Daily constituted constructive notice to all eligible bidders.

*See* Federal Defendants' Opposition to Plaintiff's Application for Attorneys Fees at 4. As to the first two of these arguments, the Court noted that an incumbent contractor is unique in the class of potential bidders and that the small number of

bidders in this case rendered the incumbent essential to full and open competition. *Abel Converting*, 679 F.Supp. at 1140. Regarding the tradition of judicial deference to agency procurement decisions, it need only be said that deference is accorded most agency decisions; were this a relevant factor in the EAJA analysis, few private litigants would recover their attorney's fees and expenses. Finally, though publication in the Commerce Business Daily has been characterized as constructive notice of a solicitation, the opinions reaching this conclusion also note that such publication does not satisfy the full and open competition requirements of CICA. *See id.* (citing *United States v. Thorson Co.*, 806 F.2d 1061, 1064 (Fed.Cir.1986) and *Dan's Moving & Storage, Inc.*, B–222431, 86–1 C.P.D. ¶ 496, at 2 (May 28, 1986)).

■ In sum, the GSA's arguments painted only half the picture and ignored important circumstances of this case that distinguish several of the judicial and GAO precedents on which the GSA relied. Thus, the agency's arguments do not satisfy its burden to demonstrate that its position was substantially justified.[4] Additionally, the GSA cites no "special circumstances mak[ing] an award unjust." 28 U.S.C. § 2412(d)(1)(A). Plaintiff is entitled in principle to recover its attorney's fees and expenses. The amount to be awarded, however, is contested.

### B. *The Amount To Be Awarded To Plaintiff*

The amount to which plaintiff is entitled under EAJA depends, in this case, upon the billing rate permitted for the services of two senior attorneys and the time frame during which plaintiff's attorney's fees may be taken from the government's purse. The GSA argues that no circumstance in this case justifies an exception to the $75 per hour cap imposed by EAJA. Additionally, the agency denies that it is liable for fees and expenses incurred after it acceded to plaintiff's resolicitation demand.

### 1. The Hourly Rate To Which Plaintiff's Counsel Is Entitled

Like many fee-shifting statutes, the EAJA imposes a presumptive cap on the rate at which an attorney may be compensated. After stating that attorney's fees may be awarded, the statute parenthetically provides:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of services furnished except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). Regarding the cost of living adjustment, the GSA admits that as of November 1987 the appropriate rate of compensation was approximately $96. *See Wilkett v. I.C.C.*, 844 F.2d 867, 875 (D.C.Cir.1988) (27.77% increase in cost of living since enactment of EAJA). This increase, however, does not satisfy plaintiff's counsel. For the services of two senior attorneys, the billing rate was $175 per hour.[5] Consequently, the question arises whether some special factor justifies a higher rate.

■ The EAJA expressly recognizes that a scarcity of qualified attorneys for a particular type of litigation justifies an award of fees at a rate in excess of the statutory cap. Plaintiff argues that its

---

**4.** By the GSA's estimation, the strongest support for the substantial justification of its action comes from the fact that the GAO recommended that action. Recast, the argument is that because two arms of the government considered the action appropriate, it was substantially justified. The GSA cannot insulate itself from liability under EAJA by hiding behind nodding heads at the GAO. Many government contracting disputes concerning the GSA must pass before the Comptroller General before reaching an Article III forum. *See* 31 U.S.C. § 3552 (bid protests under CICA are decided by Comptroller General). It would be plainly unjust to allow GAO approval of GSA action to preclude any award of attorney's fees in subsequent litigation.

**5.** A junior attorney was deemed worth $90 per hour, and a paralegal, $45 per hour.

counsel deserve their $175 hourly fee "because of the limited availability of qualified counsel at the rate proposed by the government [$96]." Plaintiff's Memorandum in Support of Application for Award of Attorneys Fees and Other Expenses of Litigation at 8 [hereinafter Plaintiff's Memorandum]. The argument mischaracterizes the language of the EAJA and, if accepted, would eviscerate the rate ceiling. The statute contemplates awards above the ceiling when the nature of the case renders the proceedings capably handled by only a limited number of attorneys. Were the Court to exceed the statutory ceiling simply because no attorney in Washington, D.C. offers his services at $96 per hour, the ceiling would be meaningless. *Pierce*, 108 S.Ct. at 2553. Indeed, the search for an experienced attorney at the adjusted statutory rate would likely be fruitless, and the EAJA does not authorize disregard for the ceiling because attorneys' rates have increased more quickly than the cost of living. If the award is to be calculated with a rate higher than $96 per hour, plaintiff must identify some other special factor.[6]

As additional special factors justifying a $175 hourly rate for its counsel, plaintiff cites "the public interest served by this litigation, the excellent result obtained and the quality of the representation by plaintiff's counsel." Plaintiff's Memorandum at

8. The Court has noted that plaintiff's lawsuit vindicates the interest of all citizens that government procurement be accomplished at the lowest possible price. *Abel Converting*, 679 F.Supp. at 1141 n. 11. Nevertheless, the public interest served by plaintiff's victory is common to all bid protests under CICA; neither the enhancement of competition nor the enforcement of procurement regulations is a special factor within the meaning of EAJA. Were the contrary true, nearly every successful bid protester would justifiably claim attorney's fees above the statutory ceiling.

While plaintiff's counsel may be proud of the battle fought and won in this case, their achievement was not extraordinary. At bottom, the dispute resolved by the Court was simply whether GSA may violate its own regulations, discover the error, and refuse to take complete ameliorative action. The agency admitted its failure to send solicitation materials to plaintiff, and the Court determined with little difficulty that the absence of plaintiff from the small pool of bidders was detrimental to the competitiveness in bidding mandated by CICA. Consequently, there exists no special factor justifying an award of attorney's fees in excess of the adjusted statutory ceiling of $96.[7]

---

6. After concluding that the rarity of affordable attorneys is a special factor justifying the $175 rate, plaintiff contends that the starting point for determining a reasonable hourly rate is the attorney's customary billing rate. While this may be true for awards of attorney's fees under civil rights statutes, *e.g.*, 42 U.S.C. § 1988, it clearly is not true for awards under EAJA. Subsection (d)(2)(A) of the statute unequivocally establishes the presumption that awards will be made at the rate of $75 per hour adjusted for the cost of living. Only special factors permit the Court to calculate the award based on a higher rate.

7. The adjusted figure of $96 is based on increases in the cost of living as of November 1987. In the eight months that have passed since this figure was calculated, the cost of living has unquestionably increased. The Court grants plaintiff leave to file an affidavit or other evidence of the United States Department of Labor statistics regarding the cost of living increase since November 1987. *See Hirschey v. FERC*,

777 F.2d 1, 5 (D.C.Cir.1985) (baseline for measuring cost of living increases is year EAJA became effective).

The government has also objected to the hourly rates charged for the services of attorney Bruce Reznik. Mr. Reznik was employed by plaintiff's counsel essentially as a subcontractor, and the government believes that the rate for his services should be no greater than that charged by him—$60. Plaintiff's counsel, however, have billed Mr. Reznik's services at the rate of $90 per hour, which they state is their standard rate for junior attorneys. The nature of the relationship between Mr. Reznik and plaintiff's other counsel is no basis to reduce the rate at which Mr. Reznik's services are compensable. The $30 difference about which the government complains reflects the overhead naturally included in the billing rate for any attorney's services. *See Hirschey*, 777 F.2d at 6 ("overhead and secretarial expenses ... are traditionally covered by attorneys' fees and not charged separately"); *Wilkett*, 844 F.2d at 875–76 n. 6 (same).

### 2. The Time Frame For Which The Government Is Liable For Attorney's Fees

 Plaintiff's calculation of attorney's fees is based on services received by it from January 20, 1988, five days prior to the filing of this lawsuit, through the resolution of the fees petition now before the Court. On February 16, 1988, however, the government filed with the Court a notice of its intent to rescind the entire solicitation. At that moment, the government's position became identical to that sought by plaintiff from the outset. The government contends that it cannot be liable for attorney's fees and expenses incurred after it acquiesced.

Though the government offers no rationale for relieving it of liability after it acquiesced, the argument is intuitively based upon the concept of "substantial justification." When the government adopts a losing position against a private litigant who then petitions for fees under EAJA, the government may avoid liability by demonstrating that its position was substantially justified. If during the course of the litigation, however, the government accepts the private litigant's demand, which is later determined by the Court to be justified, the government's position from that point forward is necessarily substantially justified. Thus, it would be contrary to the EAJA to impose upon the government the burden of the plaintiff's attorney's fees and expenses incurred after the government agreed to settle the case. *Cf. Cinciarelli*, 729 F.2d at 805 (substantial justification standard must be applied to each of government's defenses).[8]

The circumstances of the case at bar present just this situation. Litigation between the government and plaintiff ended on February 16, 1988 when the government stated that it would comply with the plaintiff's demand. The suit remained vital only because another private litigant, Fort Ho-ward, took up the government's discarded sword. Accordingly, the government should not be liable for plaintiff's attorney's fees and expenses incurred during litigation of the merits of this case after February 16.

Without regard to other exclusions or reductions that the Court may deem proper, plaintiff was billed for the following hours of service between January 20, 1988 and February 16, 1988:

- Attorney Trilling . . . . . . . . . . . 106.65
- Attorney Kennedy . . . . . . . . . . . 23.25
- Attorney Reznik . . . . . . . . . . . . . 28.00
- Paralegal Tilly . . . . . . . . . . . . . . 28.50

These hour totals do not reflect time expended preparing the EAJA petition.

### 3. Time Spent By Plaintiff Litigating Against Fort Howard

Another objection lodged by the government to plaintiff's fee application regards liability for time spent by plaintiff's counsel litigating against defendant-intervenor Fort Howard. The government identifies six days on which approximately 15 hours were expended on issues allegedly relating solely to Fort Howard. It argues that the principles underlying EAJA do not authorize an award of fees and expenses against the government for time spent on issues raised by Fort Howard.[9]

 While the government may correctly describe the scope of EAJA, an examination of plaintiff's counsel's billing records indicates that time spent litigating solely against Fort Howard has been excluded from the fee application. The government's objection to certain charges is so general that it is impossible to identify the particular entries about which it complains. Nevertheless, the government apparently believes that the mere mention of Fort Howard in a time record entry justifies exclusion of the entire entry. Because Fort Howard joined the government in resisting rescission of the entire solicitation,

---

**8.** This reasoning applies to merits litigation and does not preclude an award of fees and expenses incurred in asserting the EAJA claim.

**9.** Particularly, the government complains about hours spent by plaintiff's counsel analyzing rela-tive bid prices submitted by Fort Howard and plaintiff in recent years. Fort Howard argued that the GSA's error caused no injury to full and open competition because the company's prices were below bids submitted in previous years.

the two were necessarily involved together in many aspects of the case. Thus, the mere mention of Fort Howard does not justify exclusion of a billing entry, and no deduction from plaintiff's petition is warranted.

### 4. The Government's Objections For Allegedly Wasteful Or Unnecessary Legal Work

■ The government's final objection regarding legal fees charged to plaintiff concerns time spent by plaintiff's counsel determining the best forum in which to bring this lawsuit and preparing a memorandum in support of the motion for a preliminary injunction. Apparently, the government would exclude from plaintiff's fee petition all fees for work not directly necessitated by some argument presented by the government. EAJA does not so dramatically limit the fees that plaintiff may recover. Choosing a forum is an essential task in the instigation of any lawsuit, and plaintiff's counsel did not spend an inordinate amount of time making the choice. The government's objection to time spent on the preliminary injunction memorandum ignores the fact that many different issues were presented to the Court at the temporary restraining order and preliminary injunction proceedings. Specifically, the questions of standing, ripeness, and justiciability were not examined by the Court until the latter stage. Consequently, none of the time spent on these matters was wasteful or unnecessary.

### 5. Time Spent By Plaintiff's Counsel To Prepare The Attorney's Fee Petition

In its supplemental application for an award of attorney's fees and expenses, plaintiff requests that the government be required to reimburse plaintiff for fees and expenses incurred to prepare the EAJA petition. *See Cinciarelli*, 729 F.2d at 809. Plaintiff requests fees in excess of $16,000 based on approximately 80 hours of time spent by a senior attorney, 14 hours spent by a junior attorney, and 14 hours expended by a paralegal. In contrast to plaintiff's otherwise reasonable demand for fees, this demand is exaggerated.

■ The issues raised by this fee petition were not elementary but neither were they extraordinarily complicated. A review of the billing records submitted by plaintiff's counsel reveals that an unreasonable amount of time was spent researching and discussing the EAJA ceiling on attorney's fees. In this jurisdiction, research on EAJA applications requires perusal of only a few cases which speak to all the issues raised by plaintiff's petition. The 110 hours spent by plaintiff's counsel on the fees petition is far in excess of that necessary to prepare a complete and authoritative petition. Thus, plaintiff's request for fees incurred in the course of the EAJA proceedings is reduced in accordance with the following time summary:

- Attorney Trilling .............12.10
- Attorney Kennedy...........29.45
- Attorney Fastenau ..........2.25
- Paralegal Tilly ...............2.5

### 6. Plaintiff Is Entitled To Recover Only The Cost Of Photocopying and Transcription Services

■ Under the EAJA, plaintiff may recover, in addition to attorney's fees and expenses as defined in section 2412(d)(2)(A), the costs identified in 28 U.S.C. § 1920. Of the costs listed by plaintiff in its fee petition, only photocopying and transcription services are permitted by section 1920. Thus, postage, word processing, messenger services, travel, meals, and similar expenses are not compensable. *See Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1069–70 (D.C.Cir.1985); *Action on Smoking and Health v. CAB*, 724 F.2d 211, 218 (D.C.Cir.1984). After these costs are subtracted from plaintiff's petition, the amount awardable to it for costs is $1,607.63

### III. CONCLUSION

As a prevailing party with corporate assets and employees below the maximum specified in the EAJA, plaintiff is qualified to recover attorney's fees, expenses, and costs from the government. Because the government is unable to demonstrate that

its position in this litigation was substantially justified, an award is proper. Based upon the accumulation of hours discussed *supra*, plaintiff may recover the following amounts for fees charged by the listed attorneys and paralegal:

- Attorney Trilling ....... $11,400.00
- Attorney Kennedy ....... $5,059.20
- Attorney Reznik......... $2,520.00
- Attorney Fastenau ....... $202.50
- Paralegal Tilly .......... $1,395.00

These amounts yield a total attorney's fee award of $20,576.70. With compensable costs added, the total award to plaintiff is $22,184.33.

## ORDER

Upon consideration of plaintiff's Application for Attorney's Fees, the opposition thereto, and the record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 15th day of July, 1988

ORDERED that plaintiff's Application be, and hereby is, granted, in part, and denied, in part; and it is further

ORDERED that the United States shall pay to plaintiff Twenty–Two Thousand One Hundred Eighty–Four dollars and Thirty–Three cents ($22,184.33) for attorney's fees and expenses incurred in this litigation; and it is further

ORDERED that the amount stated in the preceding paragraph may be adjusted by order of the Court upon submission by plaintiff on or before July 22, 1988 United States Department of Labor statistics regarding the increase in the cost of living between November 1987 and the date of this Order.