**Mabel JEFREY, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Defendant.**

**No. 88 Civ. 2792 (JMW).**

United States District Court,
S.D. New York.

April 3, 1989.

Peter Hirsch, New York City, for plaintiff.

Ping C. Moy, Asst. U.S. Atty., New York City, for the government.

## MEMORANDUM AND ORDER

WALKER, District Judge:

This case is currently before the Court on plaintiff Mabel Jefrey's motion for reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA" or "the Act"). For the reasons stated below, the Court grants her motion.

### I. BACKGROUND

Plaintiff and her husband were married in August of 1972. Shortly thereafter, plaintiff's husband filed a petition in Los Angeles to obtain lawful permanent residence for his wife in the United States pursuant to 8 U.S.C. § 1151(b). For reasons that remain unclear, that petition was never adjudicated. On December 31, 1986, plaintiff filed a petition in New York to

change her status to that of lawful permanent resident, pursuant to 8 U.S.C. § 1259.[1]

In January of 1987, the INS realized plaintiff's original file was located in its Los Angeles, California District Office. The New York District Office requested the Los Angeles office to forward Jefrey's file. On April 21, 1987, plaintiff was interviewed by an employee of the Immigration and Naturalization Service ("INS") and was told that no decision could be made without access to the original file from the Los Angeles office. By the time of the April interview, the INS remained unable to locate the original file. By late April, the New York office learned that the file transfer request was still pending.

In early November of 1987, a substitute file was created for plaintiff. As the government explains, "A substitute file is created when the INS determines that, after a diligent search, [a file] cannot be located." Gov.Mem. at 4. The government cannot determine when the substitute file was forwarded to, or received by, the New York office. However, by April of 1988, plaintiff had received no indication that the INS had taken any further action on her application, nor had she been told that the INS had received a substitute file.

Plaintiff's counsel states that he made several oral inquiries in order to learn the status of the case. The government notes that no written request was made. It remains unclear what happened to the original file.

Plaintiff commenced this action, in the nature of mandamus, on April 20, 1988, roughly sixteen months after she originally initiated her petition before the INS. Service was complete on April 27. It is undisputed that defendant INS failed to answer the summons and complaint within 60 days. Instead, on June 30, a non-attorney representative of the United States Attorney's office asked plaintiff to agree to a stipulation of discontinuance since the INS intended to rule on plaintiff's case within 90 days, making the action moot. Plaintiff agreed to a discontinuance on condition that she be allowed to seek attorney's fees pursuant to the EAJA, and on the assurance that the case would be restored to the Court's calendar if the matter was not administratively adjudicated within 90 days.

The INS shortly thereafter granted plaintiff status as a lawful permanent resident. Thus, only the present motion for attorney's fees remains before the Court.

## II. DISCUSSION

*A. Whether attorney's fees are appropriate:*

The EAJA was designed to protect those who may be "deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." *Smith v. Bowen*, 867 F.2d 731, 734 (2d Cir.1989) (quoting H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 5–6). The Act provides for the recovery of attorney's fees under the following circumstances:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In order to collect attorney's fees, a party[2] must have prevailed in the action. A plaintiff may be considered a "prevailing party" if she "succeed[ed] on any signifi-

---

**1.** That section generally provides for lawful permanent residence for an individual who entered the United States prior to January 1, 1972; has resided here continuously since that time; is a person of good moral character; and who is not otherwise ineligible to citizenship. *See* Section 249, 8 U.S.C. § 1259.

**2.** The government does not contest that Jefrey is a "party" for the purposes of the EAJA.

cant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citations omitted). Courts liberally interpret the "prevailing party" requirement. *See, e.g., Correa v. Heckler,* 587 F.Supp. 1216 (S.D.N.Y.1984); *McGill v. Secretary of HHS,* 712 F.2d 28 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984). If the plaintiff has achieved the basic objective of her lawsuit, then this Court will consider that plaintiff a "prevailing party" for purposes of the EAJA.

▇ In the present action, plaintiff sought a writ of mandamus to force the INS to adjudicate her claim. Subsequently, she was granted status as a lawful permanent resident. On the record before it, the Court has no trouble concluding that the filing of the present action finally led to a prompt disposition of Jefrey's claim before the INS. Consequently, the Court concludes that Jefrey is a "prevailing party" for purposes of the EAJA.

Even a prevailing party, however, may be denied attorney's fees. In order to deny a party such fees, the government "must make a 'strong showing' that its litigation position was substantially justified, which is 'essentially [a showing] of reasonableness.'" *Boudin v. Thomas,* 732 F.2d 1107 (2d Cir.1984). *See also Pierce v. Underwood,* — U.S. —, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (the government's position is "substantially justified" for EAJA purposes if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person.") (citation omitted).

The term "position of the United States" was defined by law in 1986 to include both "the position taken by the United States in the civil action," as well as "the action *or failure to act* by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D) (emphasis added). Thus, a court must inquire into both the underlying agency action affecting a party as well as the government's litigation strategy, if

there is any litigation. *See Smith v. Bowen, supra,* at 734.

▇ The present motion, then, depends on whether the government has convinced the Court that its position was "substantially justified," which is to say, reasonable under the circumstances. The Court concludes that the government has not met its burden. The government relies solely on a declaration from a supervisor in the New York office of the INS. *See* Declaration of Irma Williams ("Williams Dec."). The closest that declaration comes to setting forth a reasonable justification for the delay in this case is a general assertion that "it is not unusual for a file transfer to take six to eight months. The wait is usually occasioned by processing and search time, and the high volume of applications being handled by local INS offices." Williams Dec. ¶ 6. First, the Court notes that "not unusual" does not necessarily mean "reasonable." A court's function extends beyond placing its imprimatur on the status quo. Second, the government offers no explanation of why, in this modern age, it takes six to eight months merely to search for or transfer a file from one INS office to another. Nor has the INS adequately explained why *sixteen* months had passed by the time Jefrey initiated this action. Third, this is not a case where the delay was necessitated by research or investigation of claims made by an applicant. Rather, the INS merely attempted to *locate* the file. Furthermore, the government has not satisfactorily addressed an obvious inference: plaintiff's file was lost, the INS realized it was lost in November of 1987, and by April of 1988, the INS still had not made use of the substitute file.

Beyond all this, the government in effect asks this Court to condone its procedural default. But its lack of a "litigation position" in this matter—its failure even to answer the complaint—cannot be considered "reasonable." This is not a case, for instance, where a government agency sought to interpret duly promulgated regulations and then possibly overstepped appropriate boundaries. *See, e.g., Smith v. Bowen, supra.* No policy interpretation is

at issue here, and no deference is warranted. Rather, this case presents an unreasonable delay and disorganization that continued until defendant was in default.[3]

Based on the reasons set forth above, the Court concludes that the award of attorney's fees is appropriate in this action.

### B. *The appropriate amount:*

If fees are deemed appropriate, then the district court must award fees for counsel's representation before the agency and in all subsequent litigation of the matter, "even if the Government's litigation position is itself reasonable when considered alone." *Smith v. Bowen, supra* at 734. The amount of the award remains within the court's discretion. *See, e.g., New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983). Plaintiff's counsel has submitted contemporaneous time records with his papers.

■ Counsel failed to submit the records with his initial motion papers. However, such records were submitted with his reply papers. The Second Circuit has held that contemporaneous time records must be submitted with the "original application." *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). In this action, the government was given the opportunity to find inconsistencies in the records, or to challenge their authenticity. Furthermore, by letter dated December 22, 1988, the government informed the Court that it "takes no position on whether plaintiff's submission of copies of contemporaneous time records in re-

sponse to the government's argument, rather than with the filing of his initial papers, should be deemed to be a submission with the 'original' application." Letter of Assistant U.S. Attorney Ping C. Moy. The Court admonishes counsel for plaintiff, who risked his client's motion by ignoring the Second Circuit's recent and straightforward holding in *Lewis, supra.* In light of both plaintiff's best interests and the lack of any prejudice to the government, the Court holds that for the purposes of this motion, "original application" includes counsel's reply papers, as long as the government is given an opportunity to examine and comment on the records at issue. However, those records, to say the least, fall short of what this Court expects from attorneys licensed to practice law in New York. Counsel's excuses are unavailing and even intemperate.[4]

■ At the time he filed this motion, which is to say for his work up until that point, plaintiff's counsel requested $500 plus $120 filing costs for this action for a total of $620.00. Plaintiff's counsel now seeks $4,544.46, based upon an hourly rate of $100. Having painstakingly reviewed the submitted records, having judged the quality of the papers, and having assessed the complexity of the legal issues involved in this matter, the Court has determined that attorney's fees in the amount of $3000 will justly compensate plaintiff's counsel for his efforts. The Court conditions this award on its assumption that this figure will represent the total amount received by plaintiff's counsel, and that he will not turn

---

**3.** The government relies heavily on *INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) in which, it argues, the Supreme Court "held that an eighteen-month delay in adjudicating an adjustment applications [sic] ... was not unreasonable." Gov.Mem. at 7. That case, however, did not involve the EAJA, nor did it hold that an eighteen-month delay "was not unreasonable." Rather, *INS v. Miranda,* raised the question of whether the government's "affirmative misconduct" would estop it from denying citizenship to an alien. The standard for prevailing in an estoppel case is high. *See, e.g., INS v. Hibi,* 414 U.S. 5, 8–9, 94 S.Ct. 19, 21–22, 38 L.Ed.2d 7 (1973). In *INS v. Miranda,* the Court required an especially strong showing before it would order citizenship granted to an alien. The government here cannot reasonably argue that the awarding of a few hundred, or

even a few thousand, dollars in attorney's fees intrudes on the sovereignty of the INS in any way remotely like estopping the government from denying an alien citizenship.

Other cases relied on by the INS are similarly inapposite, as they address not unreasonable delay and procedural default, but rather factual or legal analyses. *See, e.g., Kirkland v. Railroad Retirement Board,* 706 F.2d 99 (2d Cir.1983).

**4.** For instance: "With all due respect to the 2nd Circuit Court of Appeals, it obviously does not comprehend the nature of a solo practice ... If the 2nd Circuit chooses not to rely upon my time-log summary and my integrity and Rule 11, then so be it ..." P.Reply Mem. at 7. To argue that a solo practitioner cannot keep simple and orderly time-logs is absurd.

to his client for supplemental fees—particularly since, on this motion, plaintiff's counsel has affirmatively relied on his client's financial hardship. *See, e.g.,* P.Mem. at 3. The Court directs plaintiff's counsel to set forth in an affidavit that he has explained this Order to his client, that she fully understands its meaning, and that he has no intention of seeking additional fees from her. Such an affidavit must be submitted to this Court no later than April 17, 1989.

### CONCLUSION

For the reasons set forth above, plaintiff's motion is granted, and fees shall be awarded in the amount of $3000.

SO ORDERED.