Morton **NADLER**, Plaintiff,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, et al., Defendants.**

**Civ. A. No. 88–1586–OG.**

United States District Court, District of Columbia.

Dec. 6, 1989.

Sam Bernsen, Fragomen, Del Rey & Bernsen, Washington, D.C., for plaintiff.

James N. Owens, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before the Court on plaintiff's motion for attorneys fees under the Equal Access to Justice Act ("EAJA" or "the Act"), 28 U.S.C. § 2412(d). On March 30, 1989, this Court granted plaintiff's motion for summary judgment, ordering the Immigration and Naturalization Service ("INS") to adjudicate plaintiff's application for adjustment of status within thirty days. Although defendants concede that plaintiff is a prevailing party to this litigation, they argue that attorneys fees are not warranted because defendants' position was "substantially justified." For the reasons that follow, the Court grants plaintiff's motion.

### I. BACKGROUND

This mandamus action was brought by plaintiff Morton Nadler to compel the INS to make a decision on his application for adjustment of status to that of permanent resident alien. On April 24, 1987, the INS District Office in Arlington, Virginia, accepted plaintiff Nadler's application, which in effect had been pending since 1986.[1] When the INS failed to take any action on his application or respond to plaintiff's written inquiries by June 9, 1988, plaintiff filed this mandamus proceeding. On October 21, 1988, the INS District Director denied Nadler's application for a change of status to that of permanent resident alien, but certified his case for review to the INS Regional Director.

On March 30, 1989, this Court rejected defendants' argument that the District Director's decision rendered plaintiff's request for mandamus moot, holding that the District Director's ruling was not a final judgment but merely a proposed decision. The Court also held that defendants' delay in adjudicating plaintiff's application was unreasonable. The Court ordered defendants to make a final adjudication of plain-

---

1. The INS accepted Nadler's application only after he filed a mandamus action in this Court. Once the INS agreed to accept the application, plaintiff dismissed the case.

tiff's application for adjustment of status within thirty days. *Nadler v. INS,* No. 88–1586, slip op. (D.D.C. Mar. 30, 1989).

On April 25, 1989, in accordance with the Court's Order, the Regional Director issued a final ruling on plaintiff's application, in which he affirmed the decision of the District Director and denied plaintiff's application for adjustment of status to that of permanent resident alien. On June 6, 1989, plaintiff moved the Court for an award under the EAJA, seeking $8,597.50 in attorneys fees and $120.00 in costs for prevailing in his claim to have this court compel a final adjudication. On that same day plaintiff also filed a new action, Civil Action No. 89–1626, asking the Court to overturn the final decision of the INS as arbitrary, capricious, contrary to law and unsupported by the facts. Cross-motions for summary judgment, recently filed, are now ripe and pending in that separate case.

## II. DISCUSSION

The EAJA states that a court "shall" award attorneys fees and other expenses to a "prevailing party," other than the United States,

> in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Thus, by the terms of the Act, plaintiff is entitled to attorneys fees in this case provided (1) he is a prevailing party, (2) the INS's position was not substantially justified, and (3) no special circumstances exist which would render an award unjust.

There is no dispute that plaintiff Nadler, as an individual with a net worth of less than $2 million, is financially qualified to seek attorneys fees under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(B). Further, defendants concede that plaintiff qualifies as a prevailing party under the EAJA, since plaintiff clearly prevailed in his efforts to compel the INS to adjudicate his application for a change of status. Defendants' Opposition Memorandum at 5. Defendants do not argue that special circumstances exist which would make an award unjust. *See id.* at 4 n. 2. Rather, defendants object to an award of fees and costs on the ground that the position of the INS was "substantially justified." Defendants also insist that the fees and expenses demanded by plaintiff are excessive.

### A. *Whether Defendants' Position was Substantially Justified*

In order to defeat an award of fees under the EAJA, the government bears the burden of demonstrating that its position was substantially justified. *Cinciarelli v. Reagan,* 729 F.2d 801, 806 (D.C.Cir.1984); *Trahan v. Regan,* 824 F.2d 96, 101 (D.C. Cir.1987), *vacated on other grounds,* 866 F.2d 1424 (D.C.Cir.1988) (en banc). The term "substantially justified" requires the government to show that its position was "justified to a degree that could satisfy a reasonable person" or, said another way, that its position had a " 'reasonable basis both in law and fact.' " *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) (citing various cases from the Circuit Courts of Appeal). The term "position of the United States" as used in the EAJA is defined by law to include both the position taken by the agency in litigation, as well as "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); *Trahan,* 824 F.2d at 101.

In this case, the position taken by the INS in litigation was that plaintiff's mandamus action was moot. In their instant motion defendants do not wholly insist that their mootness argument was substantially justified. Instead, they argue that the nearly two-year delay by the INS in adjudicating plaintiff's application was substantially justified. In particular, they argue that the delay "was eminently reasonable and of much more benefit to plaintiff than the subsequent forced adjudication." Defendants' Opposition Memorandum at 6. In their view, plaintiff's manda-

mus action only forced the INS to make an expedited decision without all the relevant facts, to plaintiff's eventual detriment.

The Court is not persuaded by defendants' argument, which relies to a considerable extent on the virtues of hindsight. In its March 30, 1989 Order, this Court noted that the average processing time for applications such as plaintiff's was 130 days, that this period of time had long since passed, that defendants had an obligation to timely rule on plaintiff's status, and that the agency's delay of nearly two years was "unreasonable." *See Nadler v. INS,* Slip op. at 2, 4. Defendants nowhere sought to justify this delay by raising the argument they now make—that the agency's delay was "eminently reasonable" because the INS needed more time to thoroughly investigate the facts before it could fairly adjudicate plaintiff's application. In short, the fact that plaintiff's application was ultimately rejected after this Court ordered its final adjudication is not relevant to whether the agency's delay was justified.

Defendants also argue that their delay in adjudicating plaintiff's application was substantially justified because plaintiff also has an appeal currently pending before the Board of Immigration Appeals regarding his claim to U.S. citizenship.[2] In other words, defendants now suggest that the reason the INS took so long to adjudicate plaintiff's adjustment of status was due to the pendency of this unrelated appeal.

Although the INS is not confined to showing only that its litigation position was substantially justified but may rely on other arguments that go to the merits, *see* 28 U.S.C. § 2412(d)(2)(D); *Abel Converting, Inc. v. United States,* 695 F.Supp. 574, 577 (D.D.C.1988), the INS must still show that the position it asserts has a "reasonable basis both in law and fact." *Pierce v. Underwood,* 108 S.Ct. at 2549. In this case, defendants' belated argument that the procedural delay was substantially justified is without a reasonable basis in fact. Defendants' argument that the delay was

intended to benefit plaintiff by allowing more time for a thorough investigation is merely speculative. Further, there is no evidence that plaintiff's appeal before the Board of Immigration Appeals was the reason the INS took so long to adjudicate plaintiff's application for adjustment of status. This is a simple case of agency delay, which this Court already determined to be without merit. Defendants have failed to show that the delay was substantially justified, and an award of attorneys fees is therefore appropriate. *Cf. Jefrey v. INS,* 710 F.Supp. 486, 489–90 (S.D.N.Y.1989) (plaintiff held entitled to award of attorneys fees where INS delay was not substantially justified).

### B. *Amount to Be Awarded Plaintiff*

The amount to which plaintiff is entitled depends upon the billing rate permitted for two attorneys, Mr. Sam Bernsen and Mr. Todd Rubin. Plaintiff asks that the hours expended by Mr. Bernsen, a senior attorney with experience in the field of immigration law, be compensated at the rate of $200 per hour, while the hours expended by Mr. Rubin, a junior associate, be compensated at the rate of $95 per hour.

█ The EAJA imposes a presumptive cap on the rate at which attorneys may be compensated. The statute specifies that the rate of compensation shall not exceed $75 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Regarding the cost of living adjustment, plaintiff points out that, according to the Department of Labor, the accepted rate of inflation since 1981 is 27.4%. *See Hirschey v. Federal Energy Regulatory Comm'n,* 777 F.2d 1, 5 (D.C.Cir.1985) (using a starting point of 1981 to calculate the inflation factor in approving a cost of living increase to statutory lodestar rate). A 27.4% increase to

---

**2.** In March 1986, in a separate proceeding, an Immigration Law Judge determined that plaintiff was an excludable alien and ordered plaintiff deported. Plaintiff appealed the deportation order to the Board of Immigration Appeals, and that appeal is still pending. During its pendency plaintiff has remained on parole in the United States.

the $75 statutory lodestar rate results in a compensation rate of $95 per hour. Defendants do not dispute this calculation. Defendants' Opposition Memorandum at 10.

██ Mr. Bernsen, however, requests compensation at the rate of $200 per hour. The EAJA expressly recognizes that the presence of special factors, such as the "limited availability of qualified attorneys for the proceedings involved," justifies an award of fees at a rate in excess of the statutory cap. *See* 28 U.S.C. § 2412(d)(2)(A). With this in mind, Mr. Bernsen points to the following facts: he is a recognized expert in immigration and nationality law, having been employed by the INS for more than 37 years and having served as General Counsel from 1974 to 1977; it is common knowledge that immigration law is a specialized field requiring a high degree of specialized knowledge; this case involved a number of novel and difficult issues in immigration law and practice; a rate of $200 per hour is reasonable because Mr. Bernsen normally bills clients $250 per hour for his work on immigration matters.

The Supreme Court has noted that attorneys with an "identifiable practice specialty" fall within the statutory language allowing "qualified attorneys" to recover in excess of $75 per hour under the EAJA. *Pierce v. Underwood*, 108 S.Ct. at 2554. The Court is persuaded that Mr. Bernsen is entitled to an enhanced award to compensate for his expertise. However, the Court believes that a rate of $200 per hour is excessive under the circumstances. First, it is evident that a rate of $200–250 per hour is customarily charged by attorneys who specialize in immigration law. *See* Declaration of David Carliner, Exhibit 3 to Plaintiff's Memorandum. But an attorney's customary billing rate does not provide the starting point for determining reasonable hourly rates when making an award of fees under the EAJA. *Abel Converting, Inc. v. United States*, 695 F.Supp. 574, 580 n. 6 (D.D.C.1988). Second, and

more to the point, the instant case involved plaintiff's filing of a writ of mandamus to compel an agency to perform an essentially ministerial task. The Court is not convinced that the nature of this proceeding raised complicated issues of immigration law. Indeed, as plaintiff's counsel explained in oral argument, the proposed and final decisions of the INS were each less than two pages in length, signifying the uncomplicated, routine nature of the issues involved. The Court will therefore reduce Mr. Bernsen's proposed hourly rate from $200 to $150, which still fairly acknowledges and compensates his expertise in immigration matters.

██ Finally, plaintiff seeks to recover a filing fee of $120. Although defendant asserts that such fees are not recoverable under the EAJA, case law supports plaintiff's contention that such court costs are allowed to prevailing parties in mandamus actions. *See, e.g., Dillard v. Yeldell*, 334 A.2d 578 (D.C.1975). Plaintiff will be awarded this cost.

## III.  CONCLUSION

Plaintiff is entitled to recover attorneys fees and expenses for prevailing in this mandamus action to compel the INS to adjudicate his application for adjustment of status. Defendants concede that plaintiff was a prevailing party and have failed to show that the agency's nearly two-year delay was substantially justified. Plaintiff's itemized submissions show that Mr. Bernsen expended 31.25 hours and Mr. Rubin expended 36.5 hours representing plaintiff in this litigation.[3] The Court will allow Mr. Bernsen to recover at the rate of $150 per hour and Mr. Rubin to recover at the rate of $95 per hour. This results in a total award of $8,275.00, which breaks down as follows:

| | | |
|---|---|---|
| 31.25 hours (Mr. Bernsen) × $150/hour | = | $4,687.50 |
| 36.50 hours (Mr. Rubin) × $95/hour | = | $3,467.50 |
| Costs (filing fee) | = | $ 120.00 |
| Total | = | $8,275.00 |

**3.** Plaintiff's submissions show that 51.75 of these hours were devoted to the merits of this action, while the remaining 16 were devoted to the preparation and submission of this applica-

tion for fees and costs. Courts have approved the award of fees for time spent in preparing EAJA applications. *E.g., Lee v. Johnson*, 799 F.2d 31, 35 (3rd Cir.1986).